SARAH R. HACOBIAN, ESQ. (SBN 340443)
SRH Law Group, APC
440 Western Ave. Suite 205
Glendale, CA 91201
Telephone: (818) 669-8522
SRHlawgroup@outlook.com
Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ADIS POGOSYAN,**<br><br>**Petitioner,**<br><br>**v.**<br><br>**TODD LYONS, Acting Director, Immigration and Customs Enforcement, Warden, Adelanto ICE Processing Center, MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, FIELD OFFICE DIRECTOR, ICE Enforcement and Removal Operations, Los Angeles, and DOES 1-10, in their official capacities,**<br><br>**Respondents.** | Case No.:<br><br>**PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241), AND REQUEST FOR IMMEDIATE RELEASE** |

Petitioner **ADIS POGHOSYAN** ("Petitioner"), by and through his counsel, Sarah R. Hacobian of SRH Law Group, APC, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and alleges as follows:

## I. INTRODUCTION

1. This case concerns the Government's re-detention of a noncitizen whom federal

immigration authorities previously released from immigration custody and affirmatively returned to physical liberty.

2. Petitioner Adis Poghosyan is presently confined in civil immigration detention even though there is no final order of removal against him and his immigration proceedings remain pending.

3. Petitioner is not a recent arrival to the United States. DHS's own records establish that Petitioner was granted derivative asylum status with a retroactive date of June 15, 1998. **See Exh. B, DHS Form I-213 & Continuation Page at 3.**

4. Even more significantly for purposes of this Petition, DHS's own Form I-213 expressly states:

   "On July 3, 2023, U.S. Customs and Border Protection (CBP) paroled POGOSYAN into the United States at the San Ysidro Port of Entry in San Diego, CA, for criminal prosecution." **See Exh. B, Form I-213 Continuation Page at 3.**

5. Thus, the fact of Petitioner's prior parole and release into the United States is not based merely upon Petitioner's recollection or counsel's characterization. It is established by DHS's own record.

6. Petitioner also had previously been in ICE custody and was released from immigration custody into the community. His prior immigration counsel has

confirmed that, following that release, Petitioner was instructed to report to ICE; when Petitioner was unable to attend one appointment, counsel personally appeared on his behalf and obtained a rescheduled appointment.

7. Petitioner therefore had an established history of immigration custody followed by affirmative governmental release.

8. In addition, the Government's own records establish that on July 3, 2023, CBP affirmatively exercised its parole authority and returned Petitioner to physical liberty in the United States. **See Exh. B.**

9. Petitioner subsequently faced federal criminal proceedings and served the custodial sentence imposed in those proceedings.

10. Correspondence from his criminal defense counsel's office confirms that the criminal matter had been resolved, that Petitioner was serving a 27-month sentence, and that he would thereafter be released on supervision subject to conditions. **See Exh. E, Mgdesyan Law Firm Correspondence dated Sept. 9, 2026.**

11. Petitioner does not conceal or minimize his criminal history. But a criminal conviction does not eliminate the protection of the Fifth Amendment, nor does completion of a criminal sentence authorize the Government to transform criminal punishment into automatic civil immigration incarceration without constitutionally adequate process.

12. DHS has now issued a Notice to Appear dated August 26, 2026, charging Petitioner as inadmissible under INA § 212(a)(7)(A)(i)(I) and designating him an "arriving alien." **See Exh. D, Notice to Appear.**

13. Petitioner's removal proceedings remain pending. There is no final order of removal.

14. The constitutional question presented here is therefore not whether the Government may ever lawfully detain Petitioner.

15. Nor does Petitioner contend that the Government's prior grant of parole created an irrevocable entitlement never to be detained again.

16. The question is whether, after the Government previously exercised immigration custody over Petitioner and affirmatively restored him to physical liberty—including through CBP parole on July 3, 2023—the Government could later extinguish that liberty through civil re-detention **without constitutionally adequate pre-deprivation process.**

17. Recent decisions within this District answer that question in the negative.

18. In **Levon Tonapetyan**, the petitioner likewise had been paroled into the United States by CBP, lived freely in the community, remained in removal proceedings, and was subsequently re-detained. The Court held that CBP's prior parole conferred a conditional liberty interest that could not be withdrawn without constitutionally sufficient process. **See Exh. G, *Levon Tonapetyan*,**

**Order at 5–6.**

19. Tonapetyan is particularly instructive because the Government there—just as Respondents are expected to argue here—relied upon the petitioner's original classification as an "arriving alien" to invoke 8 U.S.C. § 1225.

20. The Court rejected the proposition that the original arriving-alien designation erased the legal significance of the Government's subsequent parole and the petitioner's years of actual liberty. **See Exh. G, Order at 4–5.**

21. The Court further held:

> "Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process." **See Exh. G, Order at 10.**

22. **Gor Ayvazyan**, attached as Exhibit I, likewise relied upon **E.A.T.-B. v. Wamsley**, 795 F. Supp. 3d 1316 (W.D. Wash. 2025), in recognizing that a bond hearing occurring only after incarceration cannot prevent the erroneous deprivation that due process required the Government to address **before** extinguishing liberty.

23. And in **Ganbat Ayurzana**, attached as Exhibit H, the Court expressly concluded that the appropriate remedy for such a violation is **release—not merely a post-deprivation hearing**—because release restores the status quo that existed before the unconstitutional deprivation.

24. Petitioner accordingly requests that this Court issue the writ and order his

**immediate release from immigration custody subject to appropriate conditions of supervision.**

## II. JURISDICTION AND VENUE

25. This Court has jurisdiction under 28 U.S.C. § 2241 because Petitioner is in federal custody and alleges that his custody violates the Constitution and laws of the United States.

26. Section 2241 permits federal courts to adjudicate constitutional challenges to immigration detention. See *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

27. The writ of habeas corpus historically provides a remedy to noncitizens challenging Executive detention. See *INS v. St. Cyr*, 533 U.S. 289, 301–03 (2001).

28. This Court also possesses federal-question jurisdiction under 28 U.S.C. § 1331.

29. Petitioner does **not** ask this Court to review or adjudicate the merits of his pending removal proceedings.

30. Indeed, no final removal order presently exists.

31. Petitioner instead challenges the independent legality of his present physical confinement and the absence of constitutionally adequate process preceding his re-detention.

32. Venue is proper because Petitioner is detained within this District and his immediate custodian is located within this District.

**III. PARTIES**

33.Petitioner **ADIS POGHOSYAN** is a noncitizen presently confined at the Adelanto ICE Processing Center in Adelanto, California, in the custody of the United States Department of Homeland Security ("DHS") and U.S. Immigration and Customs Enforcement ("ICE").

34. Respondent **WARDEN, ADELANTO ICE PROCESSING CENTER** is the warden of the facility where Petitioner is presently confined and is Petitioner's immediate physical custodian. The Warden is sued in his or her official capacity.

35.Respondent **TODD LYONS**, Acting Director of U.S. Immigration and Customs Enforcement, is responsible for the administration and enforcement of the federal immigration laws through ICE, including ICE's detention operations. He is sued in his official capacity.

36.Respondent **FIELD OFFICE DIRECTOR, ICE ENFORCEMENT AND REMOVAL OPERATIONS, LOS ANGELES FIELD OFFICE**, is responsible for ICE Enforcement and Removal Operations within the Los Angeles Field Office, including decisions concerning Petitioner's detention, custody, and release. The Field Office Director is sued in his or her official capacity.

37. Respondents **DOES 1–10** are federal officers, employees, agents, or officials

whose identities are presently unknown to Petitioner and who are responsible for, participated in, or have authority over Petitioner's detention and continued custody. They are sued in their official capacities.

## IV. EXHAUSTION

38. Section 2241 contains no statutory exhaustion requirement applicable to the constitutional claim presented here.

39. To the extent prudential exhaustion principles apply, exhaustion should be excused because the administrative process cannot remedy the constitutional injury Petitioner challenges.

40. The injury is not simply that Petitioner has been detained for too long.

41. The constitutional injury occurred when the Government extinguished Petitioner's existing physical liberty without the process required before the deprivation occurred.

42. A hearing occurring only after incarceration cannot travel backward in time and supply the process that should have preceded the loss of liberty.

43. As the Court held in *Tonapetyan*, "[p]ost-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process." **See Exh. G, Order at 10.**

44. Requiring Petitioner to remain incarcerated while pursuing administrative relief would therefore perpetuate rather than remedy the constitutional injury.

## V. FACTUAL BACKGROUND

### A. DHS Records Establish That Petitioner Was Granted Derivative Asylum Dating to 1998.

45. Petitioner has a lengthy immigration history in the United States.

46. DHS's own Form I-213 states that USCIS approved Petitioner's Form I-730 on February 17, 1999, granting him derivative asylee status **retroactive to June 15, 1998. See Exh. B, Form I-213 Continuation Page at 3.**

47. USCIS separately issued a Notice of Intent to Terminate Asylum Status that expressly acknowledged that Petitioner had previously been granted derivative asylum status. **See Exh. C, Notice of Intent to Terminate Asylum Status.**

48. Exhibit C is significant for what it is—and what it is not.

49. It is a Notice of Intent to Terminate. Petitioner does not concede that the document itself establishes a completed and lawfully effective termination of his derivative asylum status.

50. Prior immigration counsel has advised undersigned counsel that the earlier notice contained within the FOIA materials was never served upon Petitioner.

51. At minimum, the Government's own records establish that Petitioner's immigration history in this country extends back to his derivative asylum grant dating to **1998**, rather than beginning with the July 2023 border encounter alleged in the current NTA.

**B. Petitioner Was Previously Released From Immigration Custody.**

52. Petitioner previously came into ICE custody following an earlier criminal matter.

53. Immigration authorities thereafter released Petitioner from custody.

54. According to prior immigration counsel, Petitioner was instructed to report to ICE following that release.

55. When Petitioner was unable to attend one scheduled appointment, his immigration attorney personally appeared on his behalf and requested that ICE reschedule it.

56. ICE did so.

57. Prior counsel reports that ICE thereafter did not send another appointment.

58. Thus, before the current detention, the Government had already exercised custody over Petitioner and subsequently returned him to the community.

**C. DHS's Own I-213 Establishes That CBP Paroled Petitioner Into the United States on July 3, 2023.**

59. There is an additional and independently documented prior governmental grant of liberty that is particularly important here.

60. DHS's Form I-213 identifies Petitioner's July 3, 2023 entry as **"PN-Parolee." See Exh. B, Form I-213 at 1.**

61. The continuation page removes any possible ambiguity:

"On July 3, 2023, U.S. Customs and Border Protection (CBP) paroled POGOSYAN into the United States at the San Ysidro Port of Entry in San Diego, CA, for criminal prosecution." **See Exh. B, Form I-213 Continuation Page at 3.**

62. Accordingly, Respondents cannot credibly characterize Petitioner as someone who simply entered the United States and was continuously subject to physical immigration detention.

63. DHS itself affirmatively exercised parole authority and restored Petitioner to physical liberty.

64. Petitioner does not contend that the 2023 parole could never lawfully be terminated.

65. Rather, Petitioner contends that once the Government affirmatively released him into the United States and he actually enjoyed physical liberty, that liberty became constitutionally significant and could not thereafter be extinguished without the process required by the Fifth Amendment.

**D. Petitioner Completed His Criminal Custodial Sentence.**

66. Petitioner subsequently faced federal criminal proceedings.

67. Correspondence dated September 9, 2026 from Mgdesyan Law Firm confirms that the criminal case had been resolved and closed, that Petitioner was serving a 27-month sentence, and that he would be released on supervision with

conditions. **See Exh. E.**

68. Petitioner does not ask this Court to disregard his criminal conviction.

69. He served the custodial punishment imposed through the criminal justice system.

70. The existence of that conviction may constitute information the Government could present in an individualized custody proceeding.

71. It does not, however, eliminate Petitioner's constitutional right to due process before civil immigration detention extinguishes his prior liberty.

72. A changed circumstance may provide evidence at a constitutionally adequate proceeding. It is not itself a substitute for constitutionally adequate process.

**E. Petitioner Has Substantial Family Ties to the United States.**

73. Petitioner is married to **Armine Ahingaryan**.

74. Petitioner and his wife were married on October 1, 2016. **See Exh. F, Family Support Documents.**

75. They have two United States citizen children, **Emily Poghosyan**, born January 30, 2014, and **William Poghosyan**, born August 2, 2017. **Id.**

76. Armine explains that Petitioner has been actively involved in raising their children and that his detention has imposed significant emotional and financial hardship upon the family. **Id.**

77. She further explains that Petitioner assists his parents with medical

appointments and healthcare needs. **Id.**

78. These family relationships reinforce the substantial private liberty interest affected by Petitioner's incarceration.

**F. Petitioner Has No Final Removal Order and His Immigration Proceedings Remain Pending.**

79. On August 26, 2026, DHS issued the present Notice to Appear. **See Exh. D.**

80. The NTA identifies Petitioner as an "arriving alien" and charges him under INA § 212(a)(7)(A)(i)(I). **Id.**

81. Petitioner's immigration proceedings remain pending.

82. **There is no final order of removal.**

83. Consequently, this is not detention for the purpose of executing an existing final removal order.

84. The Government is presently litigating Petitioner's immigration status and removability while simultaneously depriving him of physical liberty.

**VI. LEGAL ARGUMENT**

**A. RELEASE FROM IMMIGRATION CUSTODY CREATES A CONSTITUTIONALLY PROTECTED LIBERTY INTEREST.**

85. The Fifth Amendment provides that no person shall be deprived of liberty without due process of law.

86. "Freedom from imprisonment—from government custody, detention, or other

forms of physical restraint—lies at the heart" of the liberty protected by the Due Process Clause. *Zadvydas*, 533 U.S. at 690.

87. The Supreme Court recognized in *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972), that even conditional freedom is constitutionally significant.

88. *Morrissey* recognized that conditional release carries an implicit understanding that liberty will not simply be revoked arbitrarily.

89. Recent courts have repeatedly applied that principle to immigration re-detention.

90. In **Milena Aperyan**, attached as Exhibit J, the Court relied upon *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017), for the proposition that a person actually free from physical confinement—even when that freedom remains lawfully revocable—possesses a liberty interest requiring constitutional due process before re-incarceration. **See Exh. J, Aperyan Order at 9.**

91. Aperyan also relied upon *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025), recognizing that even individuals whose liberty is subject to substantial governmental constraints retain a protected liberty interest. **Id.**

92. The same reasoning appears in **Boris Asatryan**, attached as Exhibit K. There, the Court recognized that a person who is physically free—even if that freedom remains revocable—possesses a liberty interest requiring adequate process before re-incarceration. **See Exh. K, Asatryan Order at 4–5.**

93. Petitioner therefore does not have to establish that his prior release was permanent.

94. **Revocable liberty is still liberty.**

95. The Government's ability ultimately to revoke parole or release does not answer the separate constitutional question of **what process must precede the physical deprivation of that liberty.**

**B. PETITIONER'S "ARRIVING ALIEN" DESIGNATION DOES NOT ERASE THE CONSTITUTIONAL SIGNIFICANCE OF HIS PRIOR PAROLE AND ACTUAL LIBERTY.**

96. Respondents may contend that because the current NTA labels Petitioner an "arriving alien," § 1225 resolves the case.

97. **Tonapetyan directly undermines that argument.**

98. In Tonapetyan, CBP initially encountered the petitioner, served him with an NTA, and released him on parole. The petitioner thereafter remained in removal proceedings and lived freely in the community for more than two years. **See Exh. G, Tonapetyan Order at 8–9.**

99. The Government later argued that § 1225 governed because of his original classification as an arriving alien.

100. The Court rejected the attempt to make that classification dispositive and ultimately concluded that the petitioner's re-detention was governed by §

1226(a). **See Exh. G, Order at 4–5.**

101. More importantly for the constitutional claim, Tonapetyan held that when CBP paroled the petitioner into the United States, the Government conferred a **conditional liberty interest that could not be withdrawn without constitutionally sufficient process. See Exh. G, Order at 5–6.**

102. In reaching that conclusion, the Court relied upon *Morrissey*, 408 U.S. at 482; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); and *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017). **Id.**

103. Adis presents the same critical fact.

104. DHS's own I-213 states that **CBP paroled him into the United States at San Ysidro on July 3, 2023. See Exh. B.**

105. The current "arriving alien" designation cannot make that intervening governmental grant of physical liberty constitutionally disappear.

**C. MATHEWS v. ELDRIDGE REQUIRED MEANINGFUL PRE-DEPRIVATION PROCESS.**

106. The appropriate procedural due process framework is *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

107. *Mathews* considers: (1) the private interest affected; (2) the risk of erroneous deprivation under the procedures employed and the value of additional

safeguards; and (3) the Government's interest.

108. Each factor favors Petitioner.

**1. Petitioner Has a Substantial Private Interest in Remaining Free From Physical Confinement.**

109. The first factor concerns one of the most fundamental interests protected by the Constitution: physical liberty.

110. Petitioner had previously been released from immigration custody.

111. DHS additionally exercised parole authority and paroled him into the United States in 2023. **See Exh. B.**

112. Petitioner has a wife and two United States citizen children. **See Exh. F.**

113. His wife describes his significant role in supporting their household, raising their children, and assisting his parents. **Id.**

114. The private interest is therefore substantial.

**2. Re-Detention Without Advance Process Creates an Unacceptably High Risk of Erroneous Deprivation.**

115. The second *Mathews* factor strongly favors Petitioner.

116. Re-detention without a hearing permits the Government to extinguish liberty first and explain its reasons later.

117. A pre-deprivation proceeding does the opposite: it requires the Government to identify the changed circumstances allegedly warranting incarceration and

gives the person whose liberty is at stake an opportunity to respond **before incarceration occurs**.

118. In **Ganbat**, attached as Exhibit H, the Court relied upon *Larios v. Albarran*, *Ramos-Maldonado*, and **Gudavasov v. Marin**, No. 26-cv-00541-AH-MBK, 2026 WL 712827 (C.D. Cal. Mar. 9, 2026), in finding a significant risk of erroneous deprivation when a previously released noncitizen is re-detained without a pre-detention hearing. **See Exh. H, Ganbat Order at 7.**

119. Ganbat explained the value of the missing safeguard directly: a pre-deprivation hearing forces the Government to produce its evidence of changed circumstances and permits the petitioner to challenge it. **Id.**

120. Tonapetyan likewise relied upon *Saravia* in recognizing that due process in the re-detention context requires meaningful process at the time of the deprivation, rather than only after liberty has already been lost. **See Exh. G, Order at 8–10.**

121. Here, Petitioner was afforded no meaningful pre-deprivation opportunity to litigate whether his criminal history, family circumstances, supervision options, immigration history, or other relevant circumstances actually required renewed civil incarceration.

**3. The Government Has No Sufficient Interest in Avoiding Pre-Deprivation Process.**

122. The Government unquestionably has legitimate interests in enforcing immigration laws, protecting public safety, and ensuring appearances at immigration proceedings.

123. But an interest in immigration enforcement is not an interest in avoiding constitutional procedure.

124. Ganbat recognized that immigration custody hearings are routine and impose comparatively minimal administrative burdens. **See Exh. H, Order at 7–8.**

125. Accordingly, all three *Mathews* factors favor constitutionally adequate process before re-detention.

**VII. THE EXISTENCE OF A SUBSEQUENT CRIMINAL CONVICTION DOES NOT ELIMINATE THE REQUIREMENT OF DUE PROCESS.**

126. Petitioner anticipates that Respondents will emphasize his criminal history.

127. Petitioner does not ask this Court to disregard it.

128. But that argument confuses the **substantive evidence the Government may present** with the **procedural question of who decides whether that evidence warrants incarceration and when that decision must occur.**

129. A conviction may constitute a changed circumstance.

130. It does not establish that every individual with a conviction automatically presents a present danger or flight risk requiring physical civil detention.

131. Nor does it establish that less restrictive conditions of supervision are

inadequate.

132. Most importantly, it does not permit the Executive Branch to dispense with due process.

133. *Matter of Sugay*, 17 I. & N. Dec. at 640, and *Saravia*, 280 F. Supp. 3d at 1194–98, recognize the importance of changed circumstances in the revocation of previously granted liberty. **See Exh. G, Tonapetyan Order at 5–6.**

134. But whether circumstances materially changed in a manner sufficient to justify renewed incarceration is precisely the type of question that **process exists to test.**

135. Petitioner has already served the custodial punishment imposed through the criminal justice system.

136. Civil immigration detention cannot simply become an automatic continuation of a completed criminal sentence without an individualized and constitutionally adequate determination that renewed physical confinement is warranted.

**VIII. E.A.T.-B. v. WAMSLEY: A POST-DEPRIVATION BOND HEARING CANNOT CURE THE CONSTITUTIONAL INJURY.**

137. This distinction is particularly important here.

138. Petitioner does not merely claim that his detention has become excessively prolonged.

139. He challenges the Government's **initial extinguishment of an existing liberty interest without adequate pre-deprivation process.**

140. In **Gor Ayvazyan**, attached as Exhibit I, the Court confronted the contention that a later bond proceeding could adequately protect the petitioner's rights.

141. The Court relied upon **E.A.T.-B. v. Wamsley**, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025), which held that a bond hearing occurring only after detention is not an adequate procedural safeguard because it occurs **after the deprivation and therefore cannot prevent an erroneous loss of liberty. See Exh. I, Gor Ayvazyan Order at 7–8.**

142. *E.A.T.-B.* is particularly important because it distinguishes **statutory authority to detain** from the separate **constitutional requirement of due process**.

143. The Government may possess statutory authority that permits detention under certain circumstances. That does not answer whether the Constitution permits the Government to exercise that authority against a previously released person **without notice and an opportunity to be heard.**

144. Courts applying *E.A.T.-B.* have therefore rejected the proposition that the mere existence of statutory detention authority ends the constitutional inquiry.

145. Gor Ayvazyan also relied upon **Sachin v. Warden of the Desert View Facility**, No. 5:26-cv-00707-MWC-ADS, 2026 WL 855741 (C.D. Cal. Feb. 21,

2026), recognizing that a later bond hearing is post-deprivation relief and does not answer whether constitutionally required process preceded detention. **See Exh. I, Order at 7–8.**

146. Tonapetyan states the rule even more directly:

"Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process."

**See Exh. G, Order at 10.**

147. A later hearing therefore cannot retroactively constitutionalize Petitioner's re-detention.

148. The injury already occurred when Petitioner was physically confined without constitutionally adequate process.

**IX. IMMEDIATE RELEASE—NOT MERELY A POST-DEPRIVATION HEARING—IS THE APPROPRIATE REMEDY.**

149. Because the constitutional violation occurred when Petitioner was deprived of his preexisting liberty without adequate process, the appropriate remedy is restoration of the **status quo ante**.

150. **Ganbat Ayurzana** directly addressed this issue under the heading **"Appropriate Relief is Release, Not a Post-Deprivation Hearing." See Exh. H, Ganbat Order at 8.**

151. Ganbat rejected the Government's contention that a future custody hearing

could substitute for release.

152. The Court explained that release is appropriately tailored because it restores the position that existed before the unconstitutional deprivation.

153. The alternative would undermine the constitutional rule itself: if the Government could cure a failure to provide pre-deprivation process merely by offering a hearing after habeas litigation begins, the Government could **detain first and provide due process only later.**

154. Ganbat relied upon **Gudavasov v. Marin**, No. 26-cv-00541-AH-MBK, 2026 WL 712827 (C.D. Cal. Mar. 9, 2026), and other decisions ordering release rather than leaving the petitioner incarcerated pending a later hearing. **See Exh. H, Order at 8–9.**

155. That remedy is consistent with *E.A.T.-B.* as well. Courts applying *E.A.T.-B.* have ordered immediate release because a hearing occurring only after incarceration cannot prevent the deprivation the petitioner sought to avoid.

156. **Long Thanh Ly v. Marin**, No. ED CV 26-2485-SSS(E), attached as Exhibit L, provides another recent example from this District.

157. There, the petitioner had previously been released from immigration detention on supervision and was subsequently re-detained by ICE. **See Exh. L, Report and Recommendation at 1.**

158. The Magistrate Judge recommended **immediate release subject to the**

**petitioner's previous conditions of supervision. See Exh. L, R&R at 2.**

159. District Judge Sunshine Suzanne Sykes thereafter accepted and adopted the recommendation and ordered:

> "Respondents to release Petitioner ... from detention immediately, subject to the previous conditions of supervision." **See Exh. L, Order Accepting Findings, Conclusions and Recommendations at 1.**

160. Petitioner seeks similarly tailored relief here.

161. Petitioner does **not** ask this Court to terminate his pending immigration proceedings.

162. He does **not** ask this Court to immunize him from immigration supervision.

163. And he does **not** contend that DHS can never seek his detention in the future following constitutionally adequate procedures.

164. Petitioner asks the Court to restore the liberty that existed before the unconstitutional deprivation by ordering his **immediate release subject to reasonable conditions of supervision.**

**COUNT ONE**

**HABEAS CORPUS — UNCONSTITUTIONAL RE-DETENTION**

**28 U.S.C. § 2241; Fifth Amendment**

165. Petitioner realleges and incorporates paragraphs 1 through 164.

166. Petitioner is presently in federal civil immigration custody.

167. Petitioner previously enjoyed actual physical liberty following release from immigration custody.

168. DHS's own records independently establish that CBP paroled Petitioner into the United States on July 3, 2023. **See Exh. B.**

169. That actual liberty constitutes a protected liberty interest under the Fifth Amendment.

170. Respondents subsequently deprived Petitioner of that liberty without constitutionally sufficient pre-deprivation process.

171. Petitioner received no meaningful opportunity before re-incarceration to contest whether renewed civil detention was warranted.

172. His detention therefore violates the Fifth Amendment.

173. The writ should issue directing his immediate release.

## COUNT TWO

## DEPRIVATION OF PROCEDURAL DUE PROCESS

### Fifth Amendment

174. Petitioner realleges and incorporates paragraphs 1 through 173.

175. Under *Mathews v. Eldridge*, Petitioner was entitled to constitutionally adequate process before the Government extinguished his existing physical liberty.

176. Petitioner possesses an exceptionally important private interest in freedom

from physical confinement.

177. Re-detention without pre-deprivation notice and an opportunity to be heard created an unacceptable risk of erroneous deprivation.

178. A pre-deprivation proceeding would have required the Government to identify the changed circumstances allegedly warranting detention and afforded Petitioner an opportunity to contest the necessity of physical confinement.

179. The Government has no sufficient countervailing interest in avoiding those procedures.

180. Respondents therefore violated Petitioner's Fifth Amendment right to procedural due process.

**COUNT THREE**

**ARBITRARY CIVIL DETENTION**

**Fifth Amendment**

181. Petitioner realleges and incorporates paragraphs 1 through 180.

182. Immigration detention is civil, not punitive.

183. Petitioner has served the criminal custodial sentence imposed upon him.

184. The Government may not convert the completion of criminal punishment into automatic civil incarceration without constitutionally adequate process.

185. Petitioner's present detention following prior release and parole, without constitutionally adequate process governing the revocation of that liberty,

constitutes an arbitrary deprivation of liberty.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

**A.** Assume jurisdiction over this action pursuant to 28 U.S.C. § 2241;

**B.** Grant the Petition for Writ of Habeas Corpus;

**C.** Declare that Respondents violated Petitioner's Fifth Amendment right to procedural due process by re-detaining him without constitutionally adequate pre-deprivation process;

**D. Order Respondents to immediately release Petitioner from immigration custody, subject to reasonable conditions of supervision;**

**E.** Declare that a post-deprivation bond or custody hearing does not, standing alone, cure the constitutional injury caused by the failure to provide constitutionally required pre-deprivation process;

**F.** Enjoin Respondents from again re-detaining Petitioner absent constitutionally adequate pre-deprivation notice and an individualized hearing before a neutral decisionmaker, except in circumstances in which genuinely exigent conditions recognized by law render advance process impracticable;

**G.** Require, before any future re-detention, that the Government demonstrate that materially changed circumstances warrant renewed physical

confinement and bear the constitutionally appropriate burden of proof;

**H.** Award reasonable attorneys' fees and costs to the extent permitted by law; and

**I.** Grant such other and further relief as this Court deems just and proper.

Date: September 14, 2026

Respectfully submitted,

__*ss// Sarah R. Hacobian* __________
Sarah R. Hacobian, Esq.
Attorney for Petitioner

# INDEX OF EXHIBITS

**Exhibit A** – Declaration of Sarah R. Hacobian, Esq.

**Exhibit B** – DHS Form I-213 / Record of Deportable/Inadmissible Alien and Continuation Pages

**Exhibit C** – USCIS Notice of Intent to Terminate Asylum Status

**Exhibit D** – Notice to Appear dated August 26, 2026

**Exhibit E** – September 9, 2026 Correspondence from Mgdesyan Law Firm

**Exhibit F** – Family Support Documents: Letter/Declaration of Armine Ahingaryan; Marriage Certificate; Birth Certificates of Emily Poghosyan and William Poghosyan

**Exhibit G** – *Levon Tonapetyan* Order

**Exhibit H** – *Ganbat Ayurzana* Order

**Exhibit I** – *Gor Ayvazyan* Order

**Exhibit J** – *Milena Aperyan* Order

**Exhibit K** – *Boris Asatryan* Order

**Exhibit L** – *Long Thanh Ly v. Marin*, Report and Recommendation, Order Accepting Findings, Conclusions and Recommendations, and Judgment

# Exhibit A

**DECLARATION OF SARAH REBECCA HACOBIAN, ESQ.**

I, **Sarah Rebecca Hacobian**, declare as follows:

1. I am an attorney duly licensed to practice law in the State of California and am the principal attorney of SRH Law Group, APC. I am counsel for Petitioner Adis Poghosyan in this matter. I have personal knowledge of the matters stated herein based upon my representation of Petitioner, my communications with Petitioner, his family, and his prior counsel, and my review of records provided to me in connection with this representation. If called as a witness, I could and would competently testify to the matters set forth herein.
2. Petitioner is presently detained in civil immigration custody at the Adelanto ICE Processing Center in Adelanto, California.
3. In preparing the accompanying Petition for Writ of Habeas Corpus, I reviewed records concerning Petitioner's immigration history produced or maintained by the Department of Homeland Security and United States Citizenship and Immigration Services.
4. Attached to the Petition as Exhibit B is a true and correct copy of Petitioner's DHS Form I-213, Record of Deportable/Inadmissible Alien, together with its continuation pages, which I received and reviewed in connection with my representation of Petitioner.

5. The I-213 states that Petitioner's Form I-730 was approved on February 17, 1999, granting him derivative asylee status with a retroactive date of June 15, 1998.

6. The I-213 further states that, on July 3, 2023, U.S. Customs and Border Protection paroled Petitioner into the United States at the San Ysidro Port of Entry in San Diego, California, for criminal prosecution.

7. Attached to the Petition as Exhibit C is a true and correct copy of a Notice of Intent to Terminate Asylum Status contained within Petitioner's immigration records. The notice reflects Petitioner's prior grant of derivative asylum status.

8. During my investigation of Petitioner's immigration history, I communicated with Petitioner's prior immigration counsel regarding Petitioner's prior immigration custody and release. Prior counsel advised me that Petitioner had previously been transferred to ICE custody following a period of criminal custody and was thereafter released from ICE custody and instructed to report to ICE.

9. Prior counsel further advised me that when Petitioner was unable to attend an ICE appointment, counsel personally appeared on his behalf and requested that the appointment be rescheduled. According to prior counsel, ICE rescheduled the appointment, and counsel did not thereafter receive another appointment notice.

10. Prior counsel also advised me that an earlier Notice of Intent to Terminate Petitioner's asylum status contained in Petitioner's immigration records had not been served upon Petitioner.

11. Attached to the Petition as Exhibit D is a true and correct copy of the Notice to Appear dated August 26, 2026, issued to Petitioner. The NTA identifies Petitioner as an “arriving alien” and charges him under INA § 212(a)(7)(A)(i)(I).

12. Petitioner's immigration proceedings remain pending. To my knowledge and based upon the immigration records available to me, Petitioner is not presently subject to a final order of removal.

13. I have also reviewed information concerning Petitioner's recently completed federal criminal proceedings.

14. Attached to the Petition as Exhibit E is a true and correct copy of September 9, 2026 correspondence from Mgdesyan Law Firm, the office that represented Petitioner in his federal criminal matter. The correspondence states, among other things, that Petitioner's criminal case had been resolved and closed, that he was serving a 27-month sentence, and that he would be released on supervision with conditions.

15. Petitioner has now completed his criminal custodial sentence and, rather than being returned to his family and community under the contemplated conditions of supervision, is presently confined in civil immigration detention.

16. Petitioner is married to Armine Ahingaryan, and they have two minor United States citizen children, Emily Poghosyan and William Poghosyan.

17. Attached to the Petition as Exhibit F are true and correct copies of family support documents provided to me in connection with this representation, including a letter/declaration from Petitioner's wife, Armine Ahingaryan, the parties' marriage certificate, and the birth certificates of their two children.

18. Ms. Ahingaryan describes the substantial hardship Petitioner's detention has caused their family, Petitioner's important role in raising and supporting their children, and Petitioner's assistance to his parents with their medical and healthcare needs.

19. Based upon my review of the immigration records, Petitioner has a lengthy history in the United States, substantial family ties to this country, a spouse and two United States citizen minor children, and an immigration case that remains pending.

20. In support of the Petition, I have also attached several recent federal court orders addressing materially similar issues concerning the re-detention of

individuals who previously had been released from immigration custody or paroled into the United States.

21. Attached as Exhibit G is a true and correct copy of the Order in Levon Tonapetyan, addressing, among other issues, prior CBP parole, conditional liberty, re-detention, and the requirement of constitutionally adequate process.

22. Attached as Exhibit H is a true and correct copy of the Order in Ganbat Ayurzana, addressing pre-deprivation due process and immediate release as a remedy for unconstitutional re-detention.

23. Attached as Exhibit I is a true and correct copy of the Order in Gor Ayvazyan, addressing, among other authorities, *E.A.T.-B. v. Wamsley* and the inadequacy of a post-deprivation bond hearing to remedy the absence of required pre-deprivation process.

24. Attached as Exhibit J is a true and correct copy of the Order in Milena Aperyan, addressing the protected liberty interest of a person previously released from physical immigration confinement.

25. Attached as Exhibit K is a true and correct copy of the Order in Boris Asatryan, addressing prior parole/release and subsequent immigration re-detention.

26. Attached collectively as Exhibit L are true and correct copies of the Report and Recommendation, Order Accepting Findings, Conclusions and Recommendations, and Judgment in Long Thanh Ly v. Marin, in which the

Court ultimately ordered the petitioner immediately released subject to his previous conditions of supervision.

27. I submit this declaration in support of Petitioner's Petition for Writ of Habeas Corpus and his request that this Court order his immediate release from immigration detention, subject to such lawful and reasonable conditions of supervision as the Court deems appropriate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on **September 14, 2026**, at **Glendale, California.**

__*ss// Sarah R. Hacobian* __________________

**Sarah R. Hacobian, Esq.**
Attorney for Petitioner

# Exhibit B

Uploaded on: 09/03/2026 at 09:23:23 PM (Pacific Daylight Time) Base City: ADL

**U.S. Department of Homeland Security** Subject ID : 403508654

# Record of Deportable/Inadmissible Alien

| Field | Entry |
|---|---|
| Family Name (CAPS) / First / Middle | POGOSYAN, ADIS |
| Country of Citizenship | ARMENIA |
| Passport Number and Country of Issue | |
| File Number | ADE2608000102 077 429 665 |
| U.S. Address | |
| Date, Place, Time, and Manner of Last Entry | 07/03/2023 Unknown Time, SYS, PR-Parolee |
| Passenger Boarded at | |
| Number, Street, City, Province (State) and Country of Permanent Residence | |
| Date of Birth | 05/28/1981 Age: 45 |
| Date of Action | 08/29/2026 |
| Location Code | ADE/LOS |
| City, Province (State) and Country of Birth | Almavir, ARMENIA |
| AR | ☒ |
| Form : (Type and No.) Lifted ☐ Not Lifted ☐ | |
| NIV Issuing Post and NIV Number | |
| Social Security Account Name | ADIS POGOSYAN |
| Date Visa Issued | |
| Social Security Number | 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 |

| Sex | Hair | Eyes | Cmplxn |
|---|---|---|---|
| M | BRO | BRO | FAR |

| Height | Weight | Occupation |
|---|---|---|
| 69 | 190 | UNR |

| Field | Entry |
|---|---|
| Scars and Marks | |
| F.B.I. Number | 505527JC3 |
| Marital status | ☐ Single ☐ Divorced ☒ Married ☐ Widower ☐ Separated |
| Method of Location/Apprehension | CA |
| At/Near | See I-831 |
| Date/Hour | 09/01/2026 13:02 |
| By | A 3818 A. GARCIA |
| Status at Entry | |
| Status When Found | |
| Length of Time Illegally in U.S. | |

| Field | Entry |
|---|---|
| Immigration Record | POSITIVE - See Narrative |
| Criminal Record | See Narrative |
| Name, Address, and Nationality of Spouse (Maiden Name, if Appropriate) | AHINGARYN, ALMINE NATIONALITY: UNITED STATES |
| Number and Nationality of Minor Children | 2-UNITED STATES |
| Father's Name, Nationality, and Address, if Known | POGHOSYAN, GABRIEL NATIONALITY: UNITED STATES |
| Mother's Present and Maiden Names, Nationality, and Address, if Known | MNATSAKANYAN, ANZHELA NATIONALITY: UNITED STATES |
| Monies Due/Property in U.S. Not in Immediate Possession | None Claimed |
| Fingerprinted? | ☒ Yes ☐ No |
| Systems Checks | See Narrative |
| Charge Code Words(s) | See Narrative |
| Name and Address of (Last)(Current) U.S. Employer | |
| Type of Employment | Unemployed or Retired |
| Salary | Hr |
| Employed from/to | |

Narrative (Outline particulars under which alien was located/apprehended. Include details not shown above regarding time, place and manner of last entry, attempted entry, or any other entry, and elements which establish administrative and/or criminal violation. Indicate means and route of travel to interior.)

FIN: 1178395559



Left Index fingerprint



Right Index fingerprint



FAMILY INFORMATION
------------------
Father:POGHOSYAN, GABRIEL has A# 077429664, is a citizen of UNITED STATES, and his immigration status is U.S. Citizen.
Mother:MNATSAKANYAN, ANZHELA has A# 075495327, is a citizen of UNITED STATES, and her immigration status is U.S. Citizen.
Spouse:AHINGARYN, ALMINE is a citizen of UNITED STATES, , their immigration status is U.S. Citizen.
Daughter:POGOSYAN, EMILY is a citizen of UNITED STATES, , their immigration status is U.S. Citizen.
Daughter:POGOSYAN, ELLEN is a citizen of UNITED STATES, , their immigration status is U.S. Citizen.
...(CONTINUED ON I-831)

S 9622 RIM
Deportation Officer
(Signature and Title of Immigration Officer)

Alien has been advised of communication privileges ________ (Date/Initials)

Distribution:

A-FILE

NRC

STAT

Received: (Subject and Documents) (Report of Interview)

Officer: S 9622 RIM

on: August 29, 2026 (time)

Disposition: Warrant of Arrest/Notice to Appear

Examining Officer: PETERSON, B 3951

Form I-213 (Rev. 08/01/07)

EOIR — 1 of 4

Uploaded on: 09/03/2026 at 09:23:23 PM (Pacific Daylight Time) Base City: ADL

U.S. Department of Homeland Security

Continuation Page for Form I-213

| Alien's Name | File Number | Date |
|---|---|---|
| POGOSYAN, ADIS | 077 429 665<br>Event No: ADE2608000102 | 08/29/2026 |

On February 17, 1999, U.S. Citizenship and Immigration Services (USCIS) approved POGOSYAN's Form I-730 application, granting him derivative asylee status with a retroactive date of June 15, 1998.

On June 30, 2011, POGOSYAN's father, POGHOSYAN, Gabriel, A077 429 664, naturalized and became a United States citizen. POGOSYAN was approximately 30 years of age at the time that his father naturalized and therefore could not have derived citizenship from his father.

On January 23, 2013, POGOSYAN's mother, MNATSAKANYAN, Anzhela, A075 495 327, naturalized and became a United States citizen. POGOSYAN was approximately 31 years of age at the time that his mother naturalized and therefore could not have derived citizenship from his mother.

On July 3, 2023, U.S. Customs and Border Protection (CBP) paroled POGOSYAN into the United States at the San Ysidro Port of Entry in San Diego, CA, for criminal prosecution.

On August 26, 2026, USCIS issued a Notice of Intent to Terminate Asylum Status (NOIT).

CRIMINAL HISTORY:

On November 30, 2010, the United States District Court, District of Kansas, convicted POGOSYAN for the offense of Possession of 15 or More Counterfeit Access Devices, a felony, in violation of Title 18 U.S.C. Section 1029(a)(3) and sentenced to 18 months of federal imprisonment.

On October 7, 2024, the United States District Court, Central District of California, convicted POGOSYAN for the offense of Prohibited Person in Possession of a Firearm and Ammunition, a felony, in violation of Title 18 U.S.C. Section 922(g)(1), (8), and (9). POGOSYAN received a sentence of 27 months of federal imprisonment.

See RAP sheet for extensive criminal history.

ADDITIONAL INFORMATION:

POGOSYAN has no claim to United States citizenship or any benefit under the INA.

POGOSYAN does not have any pending applications or petitions with USCIS.

POGOSYAN does not have any criminal convictions currently under appeal.

ERO Los Angeles advised POGOSYAN of his rights to communicate with the consular or diplomatic officer from his country of citizenship.

CASE DISPOSITION:

USCIS issued a Notice to Appear, concurrently with a NOIT, placing POGOSYAN in immigration proceedings pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration & Nationality Act, as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 211(a) of the Act [8 U.S.C.A. Section 1181(a).]

Date in Custody: ______________________

Phone call completed: Yes No

| Signature | Title |
|---|---|
| S 9622 RIM | Deportation Officer |

EOIR — 3 of 4

3 of 4 Pages

Form I-831 Continuation Page (Rev. 08/01/07)

# Exhibit C

**U.S. Department of Homeland Security**
U.S. Citizenship and Immigration Services
P.O. Box 2003
Tustin, CA 92781-2003

**U.S. Citizenship and Immigration Services**

DATE: August 26, 2026

ADIS POGOSYAN
VICTORVILLE USP
13777 AIR EXPRESSWAY BLVD
VICTORVILLE, CA 92394

RE: A 077 429 665

**Notice of Intent to Terminate Asylum Status and Hearing before an Immigration Judge**

U.S. Citizenship and Immigration Services ("USCIS") provides this letter as notice of the government's intent to terminate the derivative asylum status you were granted on June 15, 1998. A final decision on whether to terminate your asylum status will be made by an immigration judge. See 8 CFR 208.24(f). This office has received the following information indicating that your asylum status could be terminated pursuant to INA 208(c)(2) and 8 CFR 208.24(f):

- On November 30, 2010, in the United States District Court, District of Kansas, you pleaded guilty to 18 U.S.C. 1029(a)(3), Possession of 15 or More Counterfeit Access Devices, a felony. You were sentenced to 18 months imprisonment, three years of supervised release, and a $100 mandatory special assessment.
- On October 7, 2024, in the United States District Court, Central District of California, you were convicted for the offense of Prohibited Person in Possession of a Firearm and Ammunition, in violation of to 18 U.S.C. 922(g)(1), (8), and (9). You were sentenced to 27 months imprisonment, three years of supervised release, and a $100 mandatory special assessment.

As a result of these convictions, USCIS determines that you have been convicted of an aggravated felony as defined in section 101(a)(43)(R) of the Immigration and Nationality Act ("INA"), specifically an offense relating to counterfeiting, and that you have been convicted of an aggravated felony as defined in section 101(a)(43)(E)(ii) of the INA, specifically an offense described in section 922(g)(1) of Title 18 relating to firearms offenses. Therefore, your asylum status may be terminated. *See* INA 208(c)(2)(B), 208(b)(2)(A)(ii), and 208(b)(2)(B)(i).

To give you the opportunity to respond to this adverse information, you will be scheduled for a hearing in front of an Immigration Judge on a date and at a location to be arranged. You will have the opportunity at the hearing to present information and evidence to show that you are still eligible for asylum. Your asylum status will not be terminated unless a preponderance of the evidence supports termination. You may be represented at the hearing before the Immigration Court.

Sincerely,

*for* David Radel
Director, Los Angeles Asylum Office

COPY

# Exhibit D

Department of Homeland Security

## Notice to Appear

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

File No: A 077 429 665

In the Matter of:

Respondent: ADIS POGHOSYAN currently residing at:

VICTORVILLE USP - 13777 AIR EXPRESSWAY BLVD, VICTORVILLE, CA 92394

(Number, street, city and ZIP code) (Area code and phone number)

[X] 1. You are an arriving alien.
[ ] 2. You are an alien present in the United States who has not been admitted or paroled.
[ ] 3. You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;
2. You are a native of ARMENIA and a citizen of ARMENIA;
3. You applied for admission to the United States at or around San Ysidro, CA on or about July 3, 2023;
4. At that time you did not possess or present a valid unexpired immigrant visa, border crossing card, reentry permit, or other document sufficient for admission to the United States.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

Section 212(a)(7)(A)(i)(I) of the Immigration & Nationality Act, as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 211(a) of the Act [8 U.S.C.A. § 1181(a).]

[ ] This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.
[ ] Section 235(b)(1) order was vacated pursuant to: [ ] 8CFR 208.30 [ ] 8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

10250 RANCHO RD, STE 201A, ADELANTO, CA 92301

*(Complete Address of Immigration Court, including Room Number, if any)*

on SEP 16 2026 at 8:30AM to show why you should not be removed from the United States based on the

*(Date)* *(Time)*

charge(s) set forth above.

*(Signature and Title of Issuing Officer)*

Date: AUG 26 2026 Tustin CA

*(City and State)*

COPY

**Notice to Respondent**

**Alien Registration:** This Notice to Appear serves as evidence of your alien registration pursuant to INA§ 262. If you are 18 years or older, failure to carry this Notice to Appear, or other evidence of alien registration as provided in 8 C.F.R. § 264.1 (b), on your person at all times is a criminal offense pursuant to INA§ 264(e), for which you may be subject to a criminal penalty of $5,000 and imprisonment of up to 30 days.

**Notification to the Department of Homeland Security (DHS) of Change of Address:** All aliens aged 14 years or older, and all parents and legal guardians of aliens under the age of 14, must report a change of address to U.S. Citizenship and Immigration Services, a component of DHS, within 10 days of moving, pursuant to INA§ 265(a). Failure to notify DHS of your change of address is a criminal offense pursuant to INA§ 266(b), for which you may be subject to a criminal penalty of $5,000 and imprisonment of up to 30 days. More information is available online at **https://www.uscis.gov/addresschange.** **This obligation is in addition to your obligation to notify the Immigration Court of your change of address.**

**Representation:** If you choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to INA §§ 240(b)(4)(A) and 292. Unless you request otherwise in writing, no hearing will be scheduled earlier than 10 days from the date of this notice, to allow you sufficient time to secure counsel. A list of qualified attorneys and organizations who may be available to represent you at no cost is provided with this notice.

**Conduct of the hearing:** At your hearing you will be given the opportunity to admit or deny any or all of the allegations in this Notice to Appear, including that you are inadmissible or deportable. You will be advised by the immigration judge of any relief from removal for which you may appear eligible, including the privilege of voluntary departure. You will be given a reasonable opportunity to make any such application to the Immigration judge. At the time of your hearing, you should bring with you any affidavits or other documents that you desire to have considered in connection with your case. If you wish to have the testimony of any witnesses considered, you should arrange to have such witnesses present at the hearing. You will have an opportunity to present evidence on your own behalf, to examine any evidence presented by the Government, to object, on proper legal grounds, to the receipt of evidence and to cross-examine any witnesses presented by the Government. At the conclusion of your hearing, you have a right to appeal an adverse decision by the immigration judge.

**One-Year Asylum Application Deadline:** If you believe you may be eligible for asylum, you must file a Form 1-589, Application for Asylum and for Withholding of Removal. The Form 1-589, Instructions, and information on where to file the Form can be found at **www.uscis.gov/i-589.** Failure to file the Form 1-589 within one year of arrival may bar you from eligibility to apply for asylum pursuant to INA § 208(a)(2)(B).

**Notification to the Immigration Court of Change of Address:** You are required to notify the Immigration Court, in writing, of your full mailing address and telephone number (if any). You must also immediately notify the Immigration Court whenever you change your address or telephone number during the course of this proceeding by using Form EOIR-33/IC, Change of Address/Contact Information Form. Notices of hearing will be mailed to this address. If you file a Form EOIR-33/IC with the Immigration Court, you must serve a copy on the ICE Office of the Principal Legal Advisor. If you change your address or telephone number during the course of this proceeding and do not submit Form EOIR-33/IC, the Immigration Court shall not be required to provide you with written notice of your hearing. **This obligation is in addition to your obligation to notify DHS of your change of address.**

**Failure to appear:** If you fail to attend the hearing at the date, time, and place designated on this notice, or any date, time, or place later directed by the Immigration Court, the Immigration judge shall order you removed in your absence upon determining that you were provided written notice and are removable. If you are arrested by ICE after being ordered removed in your absence by the immigration judge pursuant to INA § 240(b)(5), you will be required to pay a minimum fee of $5,000, adjusted for inflation, or a greater amount as established by the Secretary of Homeland Security.

**Mandatory Duty to Depart the United States:** If you become subject to a final order of removal as defined in 8 C.F.R. § 1241.1, you must depart the United States within 90 days of the order. If you do not depart, you may be subject to a civil penalty under INA 274O(a) of $500 per day, adjusted for inflation, and imprisonment of up to 4 years (or 10 years if you belong to certain specified classes described in INA§ 237(a)(1 )(E), (2), (3), or (4)). If you are granted voluntary departure, you must comply with the terms of the voluntary departure order. If you fail to voluntarily depart within the time provided, you will be subject to a final order of removal, may be ineligible for certain immigration benefits for a period of 10 years from the date you overstayed the order, and may be subject to a civil penalty from $1,000 to $5,000, adjusted for inflation. For additional information, refer to the order granting voluntary departure, as well as INA § 240B(d).

**Sensitive locations:** To the extent that an enforcement action leading to a removal proceeding was taken against Respondent at a location described in INA§ 239(e)(1), such action complied with 8 U.S.C. § 1367.

Upon information and belief, the language that the alien understands is ENGLISH.



COPY

**Request for Prompt Hearing**

To expedite a determination in my case, I request this Notice to Appear be filed with the Executive Office of Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled.

Before: ______________________________

(Signature of Respondent)

Date: ______________

______________________________

(Signature and Title of Immigration Officer)

**Certificate of Service**

This Notice To Appear was served on the respondent by me on SEP - 1 2026, in the following manner and in compliance with section 239(a)(1) of the Act.

[ ] In person [ ] by certified mail, returned receipt # ______________ requested [ ] by regular mail

[ ] Attached is a credible fear worksheet.

[X] Attached is a list of organization and attorneys which provide free legal services.

The alien was provided oral notice in the ______________ language of the time and place of his or her hearing and of the consequences of failure to appear as provided in section 240(b)(7) of the Act.

______________________________ (Signature of Respondent if Personally Served)

______________________________ (Signature and Title of Officer)

**Privacy Act Statement**

Authority:

The Department of Homeland Security through U.S. Immigration and Customs Enforcement (ICE), U.S Customs and Border Protection (CBP), and U.S. Citizenship and Immigration Services (USCIS) are authorized to collect the information requested on this form pursuant to Sections 103, 237, 239, 240, and 290 of the Immigration and Nationality Act (INA), as amended (8 U.S.C. 1103, 1229, 1229a, and 1360), and the regulations issued pursuant thereto.

Purpose:

You are being asked to sign and date this Notice to Appear (NTA) as an acknowledgement of personal receipt of this notice. This notice, when filed with the U.S. Department of Justice's (DOJ) Executive Office for Immigration Review (EOIR), initiates removal proceedings. The NTA contains information regarding the nature of the proceedings against you, the legal authority under which proceedings are conducted, the acts or conduct alleged against you to be in violation of law, the charges against you, and the statutory provisions alleged to have been violated. The NTA also includes information about the conduct of the removal hearing, your right to representation at no expense to the government, the requirement to inform EOIR of any change in address, the consequences for failing to appear, and that generally, if you wish to apply for asylum, you must do so within one year of your arrival in the United States. If you choose to sign and date the NTA, that information will be used to confirm that you received it, and for recordkeeping.

Routine Uses:

For United States Citizens, Lawful Permanent Residents, or individuals whose records are covered by the Judicial Redress Act of 2015 (5 U.S.C. § 552a note), your information may be disclosed in accordance with the Privacy Act of 1974, 5 U.S.C. § 552a(b), including pursuant to the routine uses published in the following DHS systems of records notices (SORN): DHS/USCIS/ICE/CBP-001 Alien File, Index, and National File Tracking System of Records, DHS/USCIS-007 Benefit Information System, DHS/ICE-011 Criminal Arrest Records and Immigration Enforcement Records (CARIER), and DHS/ICE-003 General Counsel Electronic Management System (GEMS), and DHS/CBP-023 Border Patrol Enforcement Records (BPER). These SORNs can be viewed at https://www.dhs.gov/system-records-notices-sorns. When disclosed to the DOJ's EOIR for immigration proceedings, this information that is maintained and used by DOJ is covered by the following DOJ SORN: EOIR-001, Records and Management Information System, or any updated or successor SORN, which can be viewed at https://www.justice.gov/opcl/doj-systems-records. Further, your information may be disclosed pursuant to routine uses described in the abovementioned DHS SORNs or DOJ EOIR SORN to federal, state, local, tribal, territorial, and foreign law enforcement agencies for enforcement, investigatory, litigation, or other similar purposes.

For all others, as appropriate under United States law and DHS policy, the information you provide may be shared internally within DHS, as well as with federal, state, local, tribal, territorial, and foreign law enforcement; other government agencies; and other parties for enforcement, investigatory, litigation, or other similar purposes.

Disclosure:

Providing your signature and the date of your signature is voluntary. There are no effects on you for not providing your signature and date; however, removal proceedings may continue notwithstanding the failure or refusal to provide this information.



COPY

# Exhibit E

MUTUAL CLIENT- ADIS POGHOSYAN

Summary by Copilot

communication unless an agreement is agreed by all parties involved and signed by all parties. Sending a text message, email, making a phone call, or leaving a voicemail does not create an attorney-client relationship.

Anahit Keshishyan<anahit@mgdesyanlaw.com>

To: You

Wed 9/9/2026 8:41 AM

You replied on Wed 9/9/2026 10:13 AM

Hi Sarah,

Hope you are well.

The criminal case has been closed as of October of 2024. The case has been resolved and the defendant is currently incarcerated, serving a 27 month sentence. He will be released on supervision and will have drug conditions. There are no court dates pending.

Thank you.

...

*Anahit Keshishyan*

*Legal Assistant*

*Mgdesyan Law Firm*

*4529 Sherman Oaks Ave.*

*Sherman Oaks, CA 91403*

*PH: 818-386-6777*

*FAX: 818-754-6778*

***CONFIDENTIALITY NOTICE***

*This email, and any documents attached hereto, are intended only for use by the addressee(s) named above and may contain information that is legally privileged and/or confidential. If you are not the intended recipient of this e-mail, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this e-mail, and any of the attachments hereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify our office (collect calls will be accepted) to arrange for the return of the documents to us, at our expense.*

# Exhibit F

**Declaration Letter from Wife in Support of Husband's Release**

I, **Armine Ahingaryan,** respectfully submit this letter in support of my husband and to ask that he be released from ICE detention.

My husband is currently being detained by ICE, and his detention has placed an enormous burden on our family. We have **two U.S. citizen children** who depend on him every day. His absence has affected us emotionally, financially, and physically in ways that are difficult to describe.

My husband is the foundation of our family. He is a loving husband and a devoted father who is actively involved in raising our children. They miss him every day and struggle to understand why he cannot come home. His detention has caused our entire family tremendous stress, anxiety, and emotional hardship.

In addition to caring for our children, my husband provides essential financial support for our household. Without him, it has become extremely difficult to meet our family's daily needs and maintain stability.

My husband is also the primary person who helps care for his parents. He takes them to medical appointments, assists them with their healthcare needs, and is always there whenever they need help. His parents rely heavily on him, and his detention has left them without the support they have depended upon for years.

He has always been a caring, responsible, and hardworking person who puts his family first. He does everything he can to provide for us and to make sure our children and his parents are cared for. His absence has left a void that no one else can fill.

I respectfully ask that ICE consider the significant hardship our family is experiencing and allow my husband to return home while his immigration case continues. His release would allow him to resume caring for our children, supporting our family financially, and assisting his aging parents with their medical needs.

Our family needs him. We respectfully ask for compassion and the opportunity to have him home with us again.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: 9/10/2026

**Respectfully submitted,**

**Armine Ahingaryan**

X [signature]

## ԱՌԱՋՆՈՐԴԱՐԱՆ ՀԱՅՈՑ
## ՀԻՒՍԻՍԱՅԻՆ ԱՄԵՐԻԿԱՅԻ ԱՐԵՒՄՏԵԱՆ ԹԵՄԻ

### Վկայագիր Ամուսնութեան

*Այսու Կը Վկայենք Թէ*

Տիար ԱԴԻՍ ՊՈՂՈՍՅԱՆ

Եւ ԱՐՄԻՆԵ ԱՀԻՆԳԱՐՅԱՆ

*Պսակուած են Հայաստանեայց Առաքելական Ս. Եկեղեցւոյ ծէսով*

Յամի Տեառն 1 ՀՈԿՏԵՄԲԵՐ, 2016

Եկեղեցի Ս. ԱՍՏՈՒԱԾԱԾՆԻ ՀԱՅՑ. ԱՌԱՔԵԼԱԿԱՆ ԵԿԵՂԵՑԻ

Ձեռամբ ՎԱԶԳԷՆ Ա. ՔՀՆՅ. ԱԹՄԱՃԵԱՆ

Կնքահայր ԱԴԵԼՍ ԹՈՐՈՍՅԱՆ ԵՒ ՄԱՐՅԱՄ ՍՏԵՓԱՆՈՎԱ

Առաջնորդ

## WESTERN PRELACY OF THE ARMENIAN APOSTOLIC CHURCH OF AMERICA

### Certificate of Marriage

*We Hereby Certify That*

Mr. ADIS POGHOSYAN

And ARMINE AHINGARYAN

*Were joined in Holy Matrimony in accordance with the rites of the Armenian Apostolic Church*

On OCT. 1, 2016 Church ST. MARY'S ARMENIAN APOSTOLIC CHURCH

By ARCHPRIEST FR. VAZKEN ATMAJIAN

Bestman ADELS TOROSYAN & MARIAM STEPONOVA

Prelate

№ 16851

# STATE OF CALIFORNIA

CERTIFICATION OF VITAL RECORD

COUNTY OF LOS ANGELES • REGISTRAR-RECORDER/COUNTY CLERK

## CERTIFICATE OF LIVE BIRTH
STATE OF CALIFORNIA
USE BLACK INK ONLY

STATE FILE NUMBER: 

LOCAL REGISTRATION NUMBER: 1201419014506

| Section | Field | Value |
|---|---|---|
| THIS CHILD | 1A. NAME OF CHILD - FIRST | EMILY |
| | 1B. MIDDLE | - |
| | 1C. LAST | POGHOSYAN |
| | 2. SEX | FEMALE |
| | 3A. THIS BIRTH, SINGLE, TWIN, ETC. | SINGLE |
| | 3B. IF MULTIPLE, THIS CHILD 1ST, 2ND, ETC. | - |
| | 4A. DATE OF BIRTH - MM/DD/CCYY | 01/30/2014 |
| | 4B. HOUR - 24 HOUR CLOCK TIME | 1337 |
| PLACE OF BIRTH | 5A. PLACE OF BIRTH - NAME OF HOSPITAL OR FACILITY | GLENDALE ADVENTIST MED CTR |
| | 5B. STREET ADDRESS - STREET AND NUMBER, OR LOCATION | 1509 E WILSON TERRACE |
| | 5C. CITY | GLENDALE |
| | 5D. COUNTY | LOS ANGELES |
| FATHER/PARENT | 6A. NAME OF FATHER/PARENT - FIRST | ADIS |
| | 6B. MIDDLE | - |
| | 6C. LAST | POGHOSYAN |
| | 7. BIRTHPLACE - STATE/COUNTRY | ARMENIA |
| | 8. DATE OF BIRTH - MM/DD/CCYY | 05/28/1981 |
| MOTHER/PARENT | 9A. NAME OF MOTHER/PARENT - FIRST | ARMINE |
| | 9B. MIDDLE | - |
| | 9C. LAST - BIRTH NAME | AHINGARYAN |
| | 10. BIRTHPLACE - STATE/COUNTRY | ARMENIA |
| | 11. DATE OF BIRTH - MM/DD/CCYY | 07/28/1986 |
| INFORMANT AND BIRTH CERTIFICATION | I CERTIFY THAT I HAVE REVIEWED THE STATED INFORMATION AND THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE. 12A. PARENT OR OTHER INFORMANT - SIGNATURE | [signature] |
| | 12B. RELATIONSHIP TO CHILD | PARENT |
| | 12C. DATE SIGNED - MM/DD/CCYY | 01/31/2014 |
| | I CERTIFY THAT THE CHILD WAS BORN ALIVE AT THE DATE, HOUR, AND PLACE STATED. 13A. ATTENDANT/CERTIFIER - SIGNATURE AND DEGREE OR TITLE | [signature] |
| | 13B. LICENSE NUMBER | A73956 |
| | 13C. DATE SIGNED - MM/DD/CCYY | 01/31/2014 |
| | 13D. TYPED NAME, TITLE AND MAILING ADDRESS OF ATTENDANT | JOHN ARTENOS,MD,1505 WILSON TERRACE SUITE 160,GLENDALE |
| | 14. TYPED NAME AND TITLE OF CERTIFIER IF OTHER THAN ATTENDANT | |
| LOCAL REGISTRAR | 15A. DATE OF DEATH - MM/DD/CCYY | |
| | 15B. STATE FILE NO. - STATE USE ONLY | |
| | 16. LOCAL REGISTRAR - SIGNATURE | JONATHAN E FIELDING, MD |
| | 17. DATE ACCEPTED FOR REGISTRATION - MM/DD/CCYY | 02/27/2014 |

This is to certify that this document is a true copy of the official record filed with the Registrar-Recorder/County Clerk.

[signature]
DEAN C. LOGAN
Registrar-Recorder/County Clerk

MAY 05 2014

*002714705*

This copy not valid unless prepared on engraved border displaying the Seal and Signature of the Registrar-Recorder/County Clerk.
PRNCO (REV) 07/11

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

STATE OF CALIFORNIA

CERTIFICATION OF VITAL RECORD

# COUNTY OF LOS ANGELES

## REGISTRAR-RECORDER/COUNTY CLERK

## CERTIFICATE OF LIVE BIRTH
STATE OF CALIFORNIA
USE BLACK INK ONLY

STATE FILE NUMBER

1201719064099
LOCAL REGISTRATION NUMBER

| | | | | |
|---|---|---|---|---|
| THIS CHILD | 1A NAME OF CHILD - FIRST: ELLEN | 1B MIDDLE: - | 1C LAST: POGHOSYAN | |
| | 2 SEX: FEMALE | 3A THIS BIRTH, SINGLE, TWIN, ETC: SINGLE | 3B IF MULTIPLE, THIS CHILD 1ST, 2ND, ETC: - | 4A DATE OF BIRTH - MM/DD/CCYY: 08/02/2017 | 4B HOUR - 24 HOUR CLOCK TIME: 1842 |
| PLACE OF BIRTH | 5A PLACE OF BIRTH - NAME OF HOSPITAL OR FACILITY: GLENDALE ADVENTIST MED CTR | 5B STREET ADDRESS - STREET AND NUMBER, OR LOCATION: 1509 E. WILSON TERRACE | | |
| | 5C CITY: GLENDALE | 5D COUNTY: LOS ANGELES | | |
| NAME OF PARENT | 6A NAME OF PARENT - FIRST: ADIS | 6B MIDDLE: - | 6C LAST - BIRTH NAME: POGHOSYAN | 6D ☐ MOTHER ☒ FATHER ☐ PARENT; 7 BIRTHPLACE - STATE/COUNTRY: ARMENIA; 8 DATE OF BIRTH: 05/28/1981 |
| NAME OF PARENT | 9A NAME OF PARENT - FIRST: ARMINE | 9B MIDDLE: - | 9C LAST - BIRTH NAME: AHINGARYAN | 9D ☒ MOTHER ☐ FATHER ☐ PARENT; 10 BIRTHPLACE - STATE/COUNTRY: ARMENIA; 11 DATE OF BIRTH: 07/28/1986 |
| INFORMANT AND BIRTH CERTIFICATION | I CERTIFY THAT I HAVE REVIEWED THE STATED INFORMATION AND THAT IT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE | 12A PARENT OR OTHER INFORMANT - SIGNATURE: [signature] | 12B RELATIONSHIP TO CHILD: PARENT | 12C DATE SIGNED: 08/03/2017 |
| | I CERTIFY THAT THE CHILD WAS BORN ALIVE AT THE DATE, HOUR, AND PLACE STATED | 13A ATTENDANT/CERTIFIER - SIGNATURE AND DEGREE OR TITLE: [signature] | 13B LICENSE NUMBER: G055968 | 13C DATE SIGNED: 08/03/2017 |
| | 13D TYPED NAME, TITLE AND MAILING ADDRESS OF ATTENDANT: SELENA LANTRY, MD, 1505 WILSON TERRACE, GLENDALE | | 14 TYPED NAME AND TITLE OF CERTIFIER IF OTHER THAN ATTENDANT: A. VILLASENOR, H.I.M., SPVR. | |
| LOCAL REGISTRAR | 15A DATE OF DEATH - MM/DD/CCYY: | 15B STATE FILE NO - STATE USE ONLY: | 16 LOCAL REGISTRAR - SIGNATURE: JEFFREY D GUNZENHAUSER, MD SS | 17 DATE ACCEPTED FOR REGISTRATION - MM/DD/CCYY: 08/09/2017 |

CALOSANG02

This is to certify that this document is a true copy of the official record filed with the Registrar-Recorder/County Clerk.

DEAN C. LOGAN
Registrar-Recorder/County Clerk

SEP 15 2021

1000004344557

This copy is not valid unless prepared on an engraved border displaying the seal and signature of the Registrar-Recorder/County Clerk

0008476231 - 02 - E

GREAT SEAL OF THE STATE OF CALIFORNIA EUREKA

REGISTRAR-RECORDER/COUNTY CLERK COUNTY OF LOS ANGELES - CALIFORNIA

# Exhibit G

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

LEVON TONAPETYAN,

Petitioner,

v.

TODD LYONS, et al.,

Respondents.

No. 5:26-cv-02512-AYP

**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS**

## I. SUMMARY

Petitioner Levon Tonapetyan ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). Petitioner is currently detained by Immigration and Customs Enforcement ("ICE") at an immigration detention facility in this district. In this habeas action, Petitioner challenges the legality of his re-detention and continued civil confinement, asserting that Respondents violated the Due Process Clause of the Fifth Amendment by revoking his liberty without notice, without a hearing, and without any individualized determination that detention was warranted.

Having reviewed the record, and consistent with several recent decisions in this District, the Court concludes that Petitioner's re-detention on May 5, 2026—without notice, without a hearing, and without any individualized

determination that detention was warranted—violates due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Petitioner's immediate release and prohibiting future re-detention absent adequate pre-deprivation notice and an individualized hearing at which the Government must justify the need to detain him.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Armenia. (Dkt. No. 8-1 at 2.) Petitioner entered the United States without inspection and was encountered by United States Customs and Border Patrol ("USCBP") on February 17, 2024. (Dkt. No. 8-1 at 4.) On that same date, USCBP served Petitioner with a Notice to Appear, Form I-862 and released him on parole. (Dkt. No. 1 at 17.)

Petitioner contends that he has remained in removal proceedings and has resided freely in the community for the two (2) years following his parole into the United States. (Dkt. No. 1 at 4 and Dkt. No. 9 at 2.) Petitioner represents that during this time he has maintained gainful employment at a bakery and is the sole financial provider for his household. (Dkt. No. 1 at 2.)

Petitioner was arrested on or about April 29, 2026, for violation of California Penal Code § 273.5(A), felony infliction of corporal injury on a spouse/cohabitant. (Dkt. No. 8-1 at 4.) Following Petitioner's arrest, ICE's Pacific Enforcement Response Center ("PERC") lodged an Immigration Detainer with the Glendale Police Department. *Id.* The Glendale Police Department declined to honor the Immigration Detainer and subsequently released Petitioner into the community. *Id.* Petitioner's wife attests that she did not call the police, she did not make a complaint in relation to the incident, and she does not consider Petitioner to be a danger. (Dkt. No. 1 at 22.) Petitioner represents that he has no criminal convictions, and no criminal charges have

been filed as a result of his April 29, 2026, arrest. (Dkt. No. 1 at 4 and Dkt. No. 10.)

On May 5, 2026, ICE Enforcement and Removal Operations ("ERO") arrested Petitioner as he walked toward his place of employment. (Dkt. No. 8-1 at 3.) Petitioner asserts that following his arrest he has not received a hearing or any individualized determination as to whether his detention is necessary. (Dkt. No. 9 at 2-3.) Petitioner remains at the immigration detention facility as of the filing of the instant Petition. (Dkt. No. 1 at 13.)

Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 on June 11, 2026. (Dkt. No. 1.) Respondents filed their Answer (the "Answer") on June 19, 2026. (Dkt. No. 8.) Petitioner filed his Reply ("Reply") on June 22, 2026. (Dkt. No. 9.) Both parties have consented to proceed before the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III. DISCUSSION

Petitioner argues that his re-detention and continued civil confinement violate the Fifth Amendment's guarantee of due process because Respondents revoked his liberty without providing notice, without a pre-deprivation hearing, and without any opportunity to contest whether he posed a flight risk or a danger to the community. Petitioner therefore seeks immediate release, arguing that Respondents' actions contravened the procedural protections the Constitution requires before depriving an individual of liberty.

Respondents assert that Petitioner is properly detained under 8 U.S.C. § 1225(b) during his removal proceedings because he was classified as an "arriving alien" during his initial inspection and was found inadmissible for lack of valid documentation. (Dkt. No. 8 at 4.) Respondents further contend that this Court should deny the Petition because Petitioner has not shown that Respondents lacked authority to detain him or that he is entitled to immediate

release. (Dkt. No. 8 at 4-5.)

**A. The Court Has Subject Matter Jurisdiction.**

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id*. (citing INS v. St. Cyr, 533 U.S. 289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of Petitioner's due process claim.

**B. Petitioner's Detention Is Governed By 8 U.S.C. § 1226(a).**

Respondents assert that Petitioner's detention is governed under 8 U.S.C. § 1225(b)(1) because he "was classified as an 'arriving alien' during his initial inspection and was found inadmissible for lack of valid documentation." (Dkt. No. 8 at 4.)

For the reasons set forth below, having reviewed the record, the Court finds that Petitioner had previously been inspected, admitted, and placed in removal proceedings pursuant to 8 U.S.C. § 1226(a) at the time of his May 5, 2026, re-detention. Petitioner has a liberty interest and thus may not be detained without adequate constitutional protections.

Section 1226(a) applies to a noncitizen who is "detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). In *Jennings v. Rodriguez*, the Supreme Court articulated its understanding of the differentiation between §§ 1225 and 1226. *Jennings v.*

*Rodriguez*, 583 U.S. 281, 289 (2018). "Jennings held the Government may 'detain certain [noncitizens] seeking admission into the country' under § 1225(b) while § 1226 'authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings.'" *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1101 (C.D. Cal. 2025), judgment entered sub nom. *Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025) (quoting *Jennings*, 583 U.S. at 289).

Respondents do not dispute, and the documents in Respondents' evidentiary submission before the Court demonstrate that Petitioner was previously encountered by USCBP on February 17, 2024, and released on parole pending the outcome of his removal proceedings. (Dkt. No. 8-1 at 2.) Respondents correctly note that the express language of § 1225(b)(1)(A)(ii) determines that the statute applies to a noncitizen "who is *arriving* in the United States." (emphasis added). (Dkt. No. 8 at 3.) Respondents cite to no authority to support the notion that Petitioner's classification as an "arriving alien" during his initial inspection on February 17, 2024, somehow extinguishes his prior admission on parole, and the fact that he has been residing in the United States for over two (2 years) pending the outcome of his removal proceedings. On the record before the Court, Respondents have failed to demonstrate how Petitioner could plausibly be classified a noncitizen "arriving in the United States" or an "applicant for admission" under the language of § 1225, where he has been residing in the United States for over two (2 years) and has previously been admitted into the country on parole.

As such, consistent with the reasoning in *Jennings,* the express language of the Immigration and Nationality Act (the "INA"), and other courts in this district, the Court finds that Petitioner was a noncitizen already in the country pending the outcome of his removal proceedings at the time of his sudden re-detention on May 5, 2026. Therefore, Petitioner's detention is governed under 8

U.S.C. § 1226(a), and his liberty interest may not be revoked absent the constitutional protections afforded to noncitizens detained pursuant to this section.

**C. Respondents' Deprivation of Petitioner's Liberty Without Notice, a Hearing, or Any Individualized Determination that his Detention is Warranted Violates Due Process.**

Petitioner argues that his sudden re-detention without notice, without a hearing, and without any individualized determination that detention was warranted—after more than two years of residing freely in the community following his release on parole by USCBP—violates the Fifth Amendment's guarantee of due process.

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of this protection. *See Zadvydas*, 533 U.S. at 690–91.

When USCBP paroled Petitioner into the United States upon their initial encounter on February 17, 2024 (Dkt. No. 8-1 at 2), it conferred a conditional liberty interest that may not be withdrawn without constitutionally sufficient process. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019). Agency precedent likewise recognizes that a prior release should not be revoked absent materially changed circumstances. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

The Court analyzes Petitioner's due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest.

424 U.S. 319, 335 (1976). Applying these considerations here, each factor weighs strongly in Petitioner's favor.

**1. Private Interest**

Petitioner argues that his sudden re-detention without notice or a pre-deprivation hearing directly infringed upon the core liberty interest protected by the Fifth Amendment. Petitioner contends that Respondents deprived him of the ability to contest whether he posed a danger or flight risk before revoking his conditional liberty.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall ... be deprived of ... liberty ... without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and

probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d 1025, 1032–33 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that due process principles prohibit Respondents from revoking his release and re-detaining him absent adequate pre-deprivation process.

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in remaining free from custody. Petitioner asserts he lived free from physical restraint for over (2) years, he has maintained gainful employment at a bakery, and he is the sole financial provider for his household. (Dkt. No. 1 at 2.) Petitioner further contends that he has no criminal convictions, and no criminal charges had been filed against him at the time of his re-detention on May 5, 2026. (Dkt. No. 1 at 4 and Dkt. No. 10.) While Petitioner remained subject to the conditions of his parole during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025)

(quoting *Morrissey*, 408 U.S. at 482).

In consideration of the guiding principles and relevant authority, the Court finds that Petitioner's interest in remaining at liberty is both substantial and well-established. Accordingly, the Court concludes that the Due Process Clause protects Petitioner's substantial interest in maintaining his freedom from confinement. *See Cruz*, 2025 WL 4051129 at 2–6; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole*). See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that Respondents' failure to provide Petitioner with adequate pre-deprivation process creates a significant risk of erroneous deprivation. Respondents provided no notice, no pre-deprivation hearing, and no opportunity to contest whether he posed a flight risk or a danger to the community. (Dkt. No. 9 at 2-3).

The procedure employed here creates a substantial risk of error. Petitioner was suddenly arrested as he walked toward his place of employment. (Dkt. No. 8-1 at 3.) As *Saravia* explained, due process in this context requires a prompt, pre-deprivation hearing before a neutral decisionmaker at the time of rearrest, not some time long after the liberty loss has already occurred. *Saravia,* 280 F. Supp. 3d at 1194–97. The court in *Cruz v. Lyons*, considering a re-detention at a routine appointment without prior notice, likewise concluded

that such procedures pose a constitutionally unacceptable risk of erroneous deprivation. *See Cruz*, 2025 WL 4051129 at 4.

The record indicates that upon their initial encounter with Petitioner, USCBP served him with a Notice to Appear, Form I-862 and released him on parole. (Dkt. No. 1 at 17.) Petitioner contends that he has remained in removal proceedings and has resided freely in the community for the two (2) years following his parole into the United States. (Dkt. No. 1 at 4 and Dkt. No. 9 at 2.) Yet despite Petitioner's more than two (2) years of residence, maintaining gainful employment and residing freely in the community, Respondents provided no advance process to assess whether revoking his release would further the permissible purposes of immigration detention. Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process. On this record, the Court concludes that the risk of erroneous deprivation is unacceptably high.

**3. Government Interest**

As to the third *Mathews* factor, the Government's interests, as reflected in the record before the Court, are insufficient to justify the deprivation of liberty here. Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who the Government has previously found capable of residing safely in the community.

Courts considering similar re-detentions have consistently concluded that the Respondents' interest in bypassing pre-deprivation procedures is low. *Cruz v. Lyons* held that, where a noncitizen has long been released and compliant, the Respondents have no meaningful countervailing interest in effecting a sudden re-detention without a hearing, particularly because ICE routinely conducts custody hearings and the administrative burden of providing one is

minimal. *See* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). Likewise, in *López*, the court emphasized that immigration custody hearings are "routine and impose a minimal cost," and that the government's interest in re-arresting a compliant supervisee without a hearing is "low." 2025 WL 2959319, at *6 (cleaned up). *Garro Pinchi* similarly held that due process requires the Government to identify an interest "beyond its own administrative practices" to justify depriving an individual of liberty without pre-deprivation protections, and that detention "for its own sake" or due to the absence of established procedures is not a legitimate governmental interest. 792 F. Supp. 3d at 1035–36. Additionally, *Rodriguez Diaz* reiterated that where a noncitizen has long complied with reporting requirements, the Government's interest in re-detaining that individual without a hearing prior to detention is especially weak. 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

These decisions align with broader Ninth Circuit authority recognizing that the Government has no legitimate interest in detaining individuals who can be safely supervised through less restrictive means. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). They also reflect *Saravia*'s conclusion that the administrative burden of providing a brief, neutral hearing to assess any material change in circumstances is minimal, particularly where DHS already conducts such hearings in other detention contexts. 280 F. Supp. 3d at 1199–1200.

Here, Respondents do not identify any administrative or public-safety reason they could not have provided Petitioner with notice and an opportunity to be heard prior to re-detention. Nor do Respondents identify any individualized risk posed by Petitioner at the time of his re-arrest. Under

Case 2:26-cv-05324-JLS-EYP Document 12 Filed 07/21/26 Page 12 of 13 Page ID #:65

*Mathews*, the Government's interest in bypassing pre-deprivation process in these circumstances is minimal.

Accordingly, the third *Mathews* factor weighs decisively in Petitioner's favor.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Respondents' lack of constitutionally adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Respondents' re-detention of Petitioner on May 5, 2026, without adequate pre-deprivation process, violated due process and that he should be released forthwith.

**IV. CONCLUSION**

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Levon Tonapetyan's (A#244-401-241) immediate release and restoration of liberty to the conditions existing at the time of his detention on May 5, 2026, along with his personal belongings, including his identification, passport, work permits, and other documentation, and preventing his re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine him prior to his re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be

provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED: July 21, 2026

ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

# Exhibit H

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GANBAT AYURZANA,<br>Petitioner,<br>v.<br>TODD M. LYONS, et al.,<br>Respondents. | Case No. 5:26-cv-02238-KES<br><br>ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY |

## I. INTRODUCTION

Ganbat Ayurzana ("Petitioner") filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging his detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 7.) The Petition is granted and Respondents are directed to immediately release him from custody.

## II. PROCEDURAL HISTORY

Petitioner filed the present Petition on April 29, 2026. (Dkt. 1.) The Petition raises the following claims:

Ground 1: "Immediate release is warranted" because "Petitioner's continued detention" is "unnecessary," "arbitrary," and "excessive" because "[h]e has no criminal history, strong family ties, known residence, and a demonstrated history of compliance." (Pet. at 7 ¶¶ 59-66.) Alternatively, the Petition seeks "a custody hearing with the burden on the government." (Pet. at 9 ¶ 90.)

Ground 2: Respondents violated Petitioner's due process rights under the Fifth Amendment because he "was deprived of liberty without process," "the deprivation carries a high risk of error," and the "government failed to provide any procedural safeguards." (Pet. at 7-8 ¶¶ 67-74.) Respondents "fail[ed] to provide a meaningful custody determination prior to detention" and "failed to comply with [their] own regulations governing post-order detention and supervision, including 8 C.F.R. §§ 241.4 and 241.13." (Pet. at 6 ¶¶ 50-51.)

Ground 3: "This Court may issue all orders necessary to preserve jurisdiction and prevent transfer or actions frustrating meaningful review" under the All Writs Act. (Pet. at 8 ¶ 76.)

Respondents answered the Petition on May 6, 2026. ("Answer" at Dkt. 9.) They argue: (1) "the Petition is conclusory and vague" with "no specific factual allegations explaining why the arrest or detention is unlawful" (id. at 3); (2) "to the extent [the] Petition is raising a prolonged detention claim," he "does not qualify for Zadvydas[1] relief" because he "has not yet been detained for 90 days, much less the six months the Supreme Court held to be presumptively reasonable" (id. at 3-4), and "removal to Mongolia is significantly likely in the reasonably foreseeable future" (id. at 4); (3) "Petitioner has not shown that Respondent[s] violated regulations in exercising [their] discretion to revoke an OSUP [order of supervised release]" because "he submits no evidence proving that" and he "was only recently arrested and detained." (id. at 5-6); and (4) even if Petitioner had shown a

[1] Zadvydas v. Davis, 533 U.S. 678 (2001)

regulatory violation, release from custody is not an appropriate remedy (id. at 6). The Answer does not attach any exhibits or dispute any of the facts alleged in the Petition.

Petitioner filed a reply on May 8, 2026. ("Reply" at Dkt. 10.) He argues that "Respondents' Answer fundamentally mischaracterizes the nature of Petitioner's claims," because "this case is not about prolonged detention under Zadvydas" but rather "the government's sudden, warrantless, and process free deprivation of liberty of a fully compliant individual who had been living in the community." (Id. at 2 ¶¶ 2-4.) He argues, "Because [he] was detained without notice, without a hearing, and without any individualized custody determination, his continued detention violates the Fifth Amendment and warrants immediate release." (Id. at 2 ¶ 6.) Regarding the proper remedy, he argues that "a post-deprivation hearing does not cure the violation." (Id. at 4.)

## III. FACTUAL RECORD

Petitioner is a native and citizen of Mongolia who presented himself for admission on March 8, 2023, at the Otay Mesa Port of Entry. (Pet. at 4 ¶¶ 26-27.) On March 9, 2023, he was served with a notice to appear ("NTA") stating he was an arriving alien who had applied for admission and was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act ["INA"]." (Pet. Ex. B / Dkt. 1 at 16 (the NTA).)

At some point, Petitioner was released from ICE custody under conditions that required him to check in regularly. It is not clear whether he was released on bond, on an OSUP, or on his own recognizance.

Petitioner states that, since entering the United States, he has complied with all ICE reporting requirements and has never missed a check-in appointment. (Pet. at 4 ¶¶ 28-29.) He has no criminal history. (Pet. at 4 ¶ 30.) Petitioner is a husband and father of two children who depend on him emotionally and financially. (Pet. at

2 ¶ 5; id. at 4 ¶¶ 31-33.) Petitioner has diabetes, which requires ongoing medication and monitoring. (Pet. at 2 ¶ 7.)

On December 19, 2025, an Immigration Judge ("IJ") ordered Petitioner removed. (Pet. at 4 ¶ 34.) Petitioner has moved to reopen his immigration case. (Pet. at 5 ¶ 25.)

On April 24, 2026, ICE detained Petitioner at the airport while he was travelling for work. (Pet. at 5 ¶ 36.) Petitioner was detained without any notice, hearing, or individualized custody determination. (Pet. at 5 ¶ 40.) There is no evidence that he has been provided with a bond hearing either before or after his arrest.

**IV. DISCUSSION**

To the extent Respondents argue that the Petition fails to allege sufficient facts or argument to demonstrate entitlement to relief, the Court disagrees. The Petition argues:

> 47. Petitioner was detained without any meaningful individualized custody determination.
>
> 48. The Fifth Amendment requires notice and an opportunity to be heard before deprivation of liberty. See Mathews v. Eldridge, 424 U.S. 319 (1976).
>
> 49. ICE failed to provide any procedural safeguards prior to detaining Petitioner.
>
> 50. Courts in this District have held that failure to provide a meaningful custody determination prior to detention violates due process.

(Pet. at 6 ¶¶ 47-52.) Ground 2 of the Petition alleges a violation of "Fifth Amendment Due Process," and the Petition seeks immediate release from custody. (Pet. at 7-9.) These allegations are sufficient to state a claim for a violation of due process.

**A. Legal Standard.**

Under the Fifth Amendment Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards; and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**B. Analysis.**

**1. Liberty Interest and Private Interest Affected.**

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). District courts in this circuit have routinely held that noncitizens previously released from custody have a protected liberty interest in remaining out of custody, because "the government's decision to release [them] creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Ramos-Maldonado v. Semaia, No. 26-cv-01202-SSS-AS, 2026 WL 790788, at *2, 2026 U.S. Dist. LEXIS 57088, at *6-7 (C.D. Cal. Mar. 18, 2026); see also Domingo v. Kaiser, No. 25-cv-05893, 2025 WL 1940179, at *2,

2025 U.S. Dist. LEXIS 133824 at *5-6 (N.D. Cal. July 14, 2025) (collecting cases). Petitioner also has a substantial private interest in remaining out of custody because that "would allow him to care for and continue to provide for his family…." Domingo, 2025 WL 1940179, at *3, 2025 U.S. Dist. LEXIS 133824, at *6.

**2. Risk of Erroneous Deprivation and Value of Additional Procedural Safeguards.**

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

Although neither party has provided specific facts about when or why Petitioner was released from custody while his removal case was pending, such a release means DHS necessarily determined that he was not a danger to the community or flight risk. See generally 8 U.S.C. § 1226(a) (providing that DHS may detain a noncitizen "pending a decision on whether the alien is to be removed from the United States" or may release them on bond or conditional parole); 8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").

Respondent has never explained—either to Petitioner at the time of his arrest or in the present proceedings—what factual basis ICE has (if any) for changing

that determination. There is no evidence, for example, that Petitioner violated the conditions of his release. See, e.g., Larios v. Albarran, No. 25-cv-08799, 2025 WL 3043391, at *8, 2025 U.S. Dist. LEXIS 215501, at *24 (N.D. Cal. Oct. 31, 2025) ("The risk of erroneous deprivation of a noncitizen's liberty interest is particularly high where, after being previously found to not be a flight risk or danger to the community, the government seeks to re-detain them without a hearing or other procedural safeguard."); Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *10 ("In complying with Respondents' conditions of Petitioner's release, Petitioner was then arrested without a meaningful opportunity to be heard or other procedural safeguard posing a high risk of error, with substantial harm."); Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *5 (C.D. Cal. Mar. 9, 2026) ("[T]he Court finds that there is significant risk of erroneous deprivation given that Petitioner did not receive a pre-detention hearing to determine whether there is valid basis for detention, and considering that Petitioner asserts he has complied with all terms of his parole and has no criminal record.").

A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard.

**3. Countervailing Government Interest.**

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov, 2026 WL 712827, at *2, 2026 U.S. Dist. LEXIS 49484, at *6 (same). Moreover, in immigration court, custody hearings are routine and impose a minimal cost. See Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *11; Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). In the Court's

experience, DHS is routinely able to comply with court orders requiring such a hearing be held within seven days.

Accordingly, Petitioner is entitled to relief on Ground 2 of the Petition.

**4. Appropriate Relief is Release, Not a Post-Deprivation Hearing.**

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless. The government could always wait until a habeas petition is filed and then offer to hold a hearing. Many courts have found that a post-detention bond hearing is insufficient in this context. See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy).[2] In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha, 2026 WL 411355, at *7 (ordering petitioner's release and enjoining re-detention "without providing him a pre-detention hearing before a neutral decisionmaker where Respondent bears the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required"); Nieves, 2026 WL

---

[2] Aguilar v. Semaia, No. 26-cv-00023-MCS-SSC, 2026 WL 166906 (C.D. Cal. Jan. 16, 2026)—a case in which the court found that a post-deprivation hearing was sufficient relief—is factually distinguishable because Aguilar "received significantly more process than in other cases in which courts have granted relief under Mathews," including appointment of counsel in his immigration case (due to incompetency) and a recent, post-arrest hearing before an IJ. Id. at *5.

931143, at *4 (granting release and enjoining re-detention “unless his re-detention is ordered at a custody hearing before a neutral arbiter and the government has shown justification for this detention”); Fernandez, 2026 WL 136229, at *7 (ordering release and enjoining re-detention “unless [Respondents] demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that there has been a material change in circumstances justifying Petitioner’s re-detention”).

Based on the weight of this persuasive authority, the Court will enter both types of relief here.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

## V. CONCLUSION

IT IS THEREFORE ORDERED that:

1. Ground 2 of the Petition is **granted**, and the other grounds in the Petition are dismissed as moot.[3]

2. Respondents shall immediately release Petitioner from custody. If Respondents have not released Petitioner **within three days** of the date of this order, Petitioner may file a request for an order to show cause re contempt.

3. Respondents shall not re-detain Petitioner without providing him a pre-detention hearing before a neutral decisionmaker where Respondents bear the burden of demonstrating by clear and convincing evidence that (a) Petitioner is a flight risk or a danger such that his physical custody is required, or (b) on account of changed circumstances, there is a significant likelihood that Petitioner may be removed in the reasonably foreseeable future.

DATED: May 13, 2026

Karen E. Scott

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[3] To the extent Petition seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).

# Exhibit I

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

GOR AYVAZYAN,

Petitioner,

v.

FERETI SEMAIA et al.,

Respondents.

Case No. 5:26-cv-02419-MAR

**MEMORANDUM DECISION AND ORDER GRANTING PETITION AND ORDERING IMMEDIATE RELEASE**

## I.

## INTRODUCTION

On May 6, 2026, Petitioner Gor Ayvazyan ("Petitioner"), an immigration detainee, filed a Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2241 (the "Petition"), challenging his re-detention in immigration custody. Dkt. 1 ("Pet."). On May 14, 2026, Respondents filed an Answer to the Petition. Dkt. 8, ("Answer"). On May 18, 2026, Petitioner filed a Reply. Dkt. 9, ("Reply"). On June 4, 2026, Petitioner filed a Notice of Supplemental Evidence in support of Petition. Dkt. 10. The parties have consented to proceed before the undersigned U.S. Magistrate Judge for all purposes. Dkt. 6. **For the reasons set forth below, the Court GRANTS the Petition and orders Respondents to immediately release Petitioner from custody**

**on Petitioner's prior conditions of release.**

## II.

## FACTUAL BACKGROUND[1]

Petitioner is a native and citizen of Armenia who entered the United States on December 4, 2024. Pet. at 2. Petitioner entered at or near a Port of Entry and was detained for approximately one month and ten days before being released from custody on January 7, 2025. Id. Following his release, Petitioner was placed on an ankle monitor for approximately one week and then was transitioned to telephonic reporting through a mobile application. Id. For nearly a year, Petitioner remained in the community. Id. Petitioner has not missed an Immigration and Custody Enforcement ("ICE") appointment and has no criminal convictions. On April 24, 2026, Petitioner was arrested for violation of California Penal Code 243(D); however, no charges have been brought against Petitioner. See Answer at 3; Dkt. 10. On May 1, 2026, Petitioner was detained by ICE "without warning, without a hearing, and without any individualized determination that detention was necessary." Pet. at 2.

## III.

## SUMMARY OF PETITIONER'S CLAIMS

Petitioner's first claim for relief is that his detention violates 28 U.S.C. § 2241 because his detention is not justified by any legitimate purpose and because detention based solely on an unproven arrest is constitutionally impermissible. Pet. at 7. Petitioner's second claim is that his detention without a pre-deprivation hearing violates his Fifth Amendment right to due process. Id. Petitioner's third claim is that his detention is arbitrary and excessive, and that no legitimate purpose supports his

---

1 The Court sets forth a summary of the relevant factual background based on the facts alleged in the Petition and the exhibits attached. Respondents had the opportunity to dispute these facts or provide additional facts but declined to do so unless noted herein. Dkt. 8. Therefore, the Court considers the following facts to be undisputed and conceded for purposes of ruling on the Petition. See C.D. Cal. L.R. 7-12; Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (explaining that courts must assume undisputed facts alleged in a habeas petition are true)

continued detention, which violates his right to due process. Id. at 7–8. Petitioner's fourth claim for relief is that, pursuant to 28 U.S.C. § 1651, this Court has authority to prevent Petitioner's transfer and his continued detention. Id. at 8.

Petitioner seeks immediate release from custody on the same conditions of supervision as prior to his arrest. Pet. at 8. Petitioner further seeks an order enjoining Respondents from re-detaining him without due process and prohibiting his transfer without notice. Id.

In their Answer, Respondents argue that Petitioner is subject to mandatory detention based on his arrest and that his detention is authorized because he is in removal proceedings and his detention is not yet prolonged. Answer at 4.

## IV.

## LEGAL STANDARD

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. See U.S. Const., amend. V. There is no question that these protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See, e.g., Regino v. Staley, 133

F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

In addition to the procedural protections of the Due Process Clause, "[s]ubstantive due process protects individuals from state action that interferes with fundamental rights." Regino, 133 F.4th at 959-60. Governmental action that infringes a fundamental right is constitutional only if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). By contrast, governmental action that does not infringe a fundamental right survives "substantive-due-process scrutiny so long as [the action is] rationally related to legitimate government interests." Stormans, Inc. v. Wiesman, 794 F.3d 1064, 1085 (9th Cir. 2015) (internal quotation marks omitted). To assess whether there has been a violation of a fundamental right, courts must begin with "a careful description of the asserted fundamental liberty interest." Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (internal quotation marks omitted). With that careful description in mind,

courts must then decide whether the asserted interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if it was sacrificed." Khachatryan v. Blinken, 4 F.4th 841, 858 (9th Cir. 2021) (internal quotation marks and brackets omitted).

## V.

## ANALYSIS

### 1. Due process requires a pre-deprivation hearing

It is undisputed that Petitioner entered the United States in 2024. Pet. at 2. It is further undisputed that Petitioner was detained and then released from custody on bond.[2] Id.; Answer at 3. Thus, the Court concludes that once Petitioner was released from custody, he acquired "a protected liberty interest in remaining out of custody." Pinchi v. Noem, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country."). Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." Pinchi, 792 F.Supp.3d at 1032 (internal quotation marks, brackets, and ellipses omitted). This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]." Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Petitioner's liberty interest in remaining out of custody is strengthened by the time he spent out of custody building a life for himself in the United States. See, e.g.,

---

2 The fact that Petitioner was released from custody necessarily means that Petitioner demonstrated to the satisfaction of immigration officials that Petitioner's release would not pose a danger to property or persons and that he was likely to appear for any future proceeding. See Fernandez Lopez v. Wofford, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."); Garcia v. Andrews, 2025 WL 1927596, at *4 (E.D. Cal. July 14, 2025) ("The length of time and the connections Petitioner made with his community during that time create a powerful interest for Petitioner in his continued liberty.").

It is also undisputed that Petitioner was arrested by immigration authorities on May 1, 2026, without prior notice or a pre-deprivation hearing. Pet. at 2. It appears clear that petitioner has not been afforded any opportunity to contest the lawfulness of his detention. S.E. v. Noem, No. 1:26-CV-00356-DAD-SCR, 2026 WL 206085, at *3 (E.D. Cal. Jan. 27, 2026). Because the government contends that Petitioner is subject to mandatory detention, Petitioner's only available process is through a habeas petition. E.C., 2025 WL 2916264, at *10 (citing Sola v. Holder, 720 F.3d 1134, 1135 (9th Cir. 2013)). Further, Petitioner will likely not be provided process through the criminal system to contest the basis for his arrest because charges have not been filed against him. See Dkt. 10. Therefore, the risk of erroneous deprivation of petitioner's liberty is high under such circumstances. Doe, 800 F. Supp. 3d at 216–17; see also Brandon Y.M., v. Andrews, No. 1:25-cv-01962-SKO (HC), 2026 WL 125234, at *3 (E.D. Cal. Jan. 16, 2026) ("The Court further finds serious constitutional concerns would be presented if the LRA encompassed Petitioner's arrest and subsequent release without the filing of a formal accusatory pleading.").

Respondents contend that Petitioner's arrest for battery resulting in serious bodily injury to another under Cal. Penal Code § 243(d) qualifies under the LRA and subjects Petitioner to mandatory detention under § 1226(c). Answer at 3. The LRA expanded § 1226(c) to include aliens who are inadmissible under § 1182(a)(i)(6)(A), such as Petitioner, and who have been "charged with, [] arrested for…any crime that results in death or serious bodily injury to another person." See § 1226(c)(1)(E)). However, several courts have noted "serious constitutional concerns" regarding

mandatory detention for petitioners who have merely been arrested for a crime. See id. (citing Doe v. Moniz, 800 F.Supp.3d 203, 216 (D. Mass. Sept. 5, 2025)). Although Petitioner was arrested, no complaint or accusatory pleading has been filed. Dkt. 10. Furthermore, under California law, when an individual is arrested but released with no filed accusatory pleading, "the arrest shall not be deemed an arrest, but a detention only." Cal. Penal Code § 849.5. Thus, Petitioner's detention does not appear to qualify under § 1226(c)(1)(E)). Brandon Y.M., v. Andrews, No. 1:25-cv-01962-SKO (HC), 2026 WL 125234, at *3 (E.D. Cal. Jan. 16, 2026) (finding arrest for violation of Cal. Penal Code § 243(d) where no charging documents were filed did not subject Petitioner to mandatory detention). "[T]he risk of an erroneous deprivation [of liberty] is high" without a hearing because neither the government nor Petitioner had an opportunity to determine whether there was any valid basis for his detention. Pinchi, 792 F. Supp. 3d at 1035 (citing Singh v. Andrews, No. 1:25-CV-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025) (cleaned up)).

The government's interest in detaining Petitioners without notice and a pre-deprivation hearing is low. See Pinchi, 792 F. Supp. 3d at 1036 ("[T]he government has articulated no legitimate interest that would support arresting [petitioner] without a pre-detention hearing."). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" Sun v. Santacruz, No. 5:25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (quoting Doe v. Becerra, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine . . . ." Singh v. Andrews, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025). There is no indication that providing proper notice and a pre-deprivation hearing would be fiscally or administratively burdensome on the

government. See Garcia, 2026 WL 194745, at *3.

The Court concludes that Petitioner's detention by immigration authorities on May 1, 2026, without notice or a pre-deprivation hearing, violated his procedural due process rights. See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez v. Wofford, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Zinermon, 494 U.S. 113, 127 ("Generally, the Due Process Clause 'requires some kind of a hearing before the State deprives a person of liberty or property.'").

The fact that Petitioner could receive a post-deprivation hearing does not remedy the violation of Petitioner's procedural due process rights. See, e.g., Sachin Sachin v. Warden of the Desert View Facility, et al., No. 5:26-cv-00707-MWC-ADS, 2026 WL 855741 (C.D. Cal. Feb. 21, 2026) (C.D. Cal. Feb. 21, 2026) ("a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief."); E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention."). Indeed, "an increasing wave of district courts have concluded[] [that] a post-hoc bond hearing cannot support [a] [p]etitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of [the] [p]etitioner's due process rights and, thus, invalid." Orellana, Rivera v. J. Johnson,

2026 WL 1390433, at *1 & n.2 (C.D. Cal. May 14, 2026) (citing Mumaev v. Semaia, 2026 WL 530765, at *6 (C.D. Cal. Feb. 20, 2026); Charaf v. Rios, 2026 WL 1270754, at *1 (C.D. Cal. May 5, 2026); Morales, 2026 WL 1026234; Osmel v. D. Marin, 2026 WL 1209477, at *3 (C.D. Cal. Apr. 29, 2026); Singh v. Janecka, 2026 U.S. Dist. LEXIS 95798, at *16–17 (C.D. Cal. Apr. 29, 2026)). Thus, the Court concludes a bond hearing is insufficient to remedy the violation of Petitioner's due process rights in this case.

Given this violation of Petitioner's due process rights, the Court further concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted). The last uncontested status here is Petitioner's release from custody on his prior OROR. See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention."). "Accordingly, Petitioner's release from custody is the appropriate remedy." Id.; see Esmail v. Noem, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Moreover, the Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained. See, e.g., Ixchop Perez v. McAleenan, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020), appeal dismissed sub nom. Perez v. McAleenan, 2020 WL 8970669 (9th Cir. Dec. 4, 2020) ("Accordingly, this court will join the consensus view among District Courts concluding that . . . where . . . the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified." (internal quotation marks omitted)). Specifically, the Court concludes that Respondents must show by clear and convincing

evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. See, e.g., Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty. Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)); Carballo v. Andrews, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing where the government must prove by clear and convincing evidence that he is presently a flight risk or danger to the community."). Thus, the Court concludes that the Petition must be granted with the foregoing prospective injunctive relief.

The Court notes that it will entertain an application by Petitioner requesting an award of reasonable attorney's fees and costs under the Equal Access to Justice Act ("EAJA") that is filed within 30 days of entry of final judgment in this action. See Rahimi v. Semaia, 2026 WL 246066, at *3 (C.D. Cal. Jan. 27, 2026) ("The Court will consider an application requesting costs and reasonable attorney's fees under the EAJA that is filed within 30 days of final judgment in this action.").

**VI.**

**CONCLUSION**

Based on the foregoing, the Court **GRANTS** the Petition as follows. Respondents shall immediately release Petitioner **Gor Ayvazyan (A# unknown)** from custody on his prior OROR. Respondents shall also immediately return any confiscated property and documents to Petitioner upon release. When Petitioner is not yet subject to a final order of removal, Respondents shall not re-detain Petitioner without providing at least seven (7) days' notice and a pre-deprivation bond hearing. The pre-deprivation bond hearing shall occur before an Immigration Judge at which

the Government bears the burden of proof to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure Petitioner's future appearance and/or the safety of the community. The Immigration Judge must conduct an individualized assessment of Petitioner's suitability for bond in light of the forgoing standard. Respondents shall file a notice of compliance no later than **three days from entry of Judgment**.

IT IS SO ORDERED.

DATED: June 25, 2026



HON. MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE

# Exhibit J

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

MILENA APERYAN,

Petitioner,

v.

FERETI SEMAIA, et al.,

Respondents.

No. 5:26-cv-00699-WLH-AYP

**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS**

## I. SUMMARY

Petitioner Milena Aperyan filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 and complaint for injunctive relief. Ms. Aperyan is currently in the custody of the Immigration and Customs Enforcement ("ICE") at the Adelanto Detention Facility. Immigration authorities apprehended the Petitioner in 2024 after she entered the United States and she has resided in the United States since her entry on September 19, 2024. On September 20, 2024, Ms. Aperyan was deemed subject to removal under INA 212(a)(7)(A)(i) and has remained in compliance with her supervision conditions since that time. (Dkt. No. 1 at 12.) Petitioner is in removal proceedings but does not have a final order of removal. (Dkt. No. 1 at 2; Dkt. No. 15 at 8–9.)

In this habeas action, Ms. Aperyan challenges the lawfulness of her detention by ICE, pursuant to § 1126 and *Bautista*, the Due Process Clause, and

the Administrative Procedures Act ("APA"). The Petition also includes an application for preliminary relief as a temporary restraining order or preliminary injunction, requesting the same relief as in the Petition. Petitioner seeks immediate release based on compelling humanitarian considerations arising from her role as the primary caregiver of her disabled infant son.

Following several recent decisions in this District, the Court finds that Petitioner's sudden detention—without any meaningful pre-or post-deprivation process—violates due process. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Petitioner's immediate release and preventing her re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to detain her.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner Milena Aperyan is a 21-year-old native and citizen of Armenia. (Dkt. No. 1 at 6.) Petitioner was arrested by immigration officers at the port of entry in Otay Mesa, California, on September 19, 2024. (Dkt. No. 15, at 8.) She entered the United States, as an "asylum-seeking noncitizen," (Dkt. No. 1 at 2), on September 19, 2024, and was apprehended by immigration authorities that same day (Dkt. No. 15, at 2.). On September 20, 2024, the Department of Homeland Security ("DHS") filed a Notice to Appear ("NTA") charging Ms. Aperyan as subject to removal under INA section 212(a)(7)(A)(i) (codified in 8 U.S.C. § 1182(a)(7)(A)(i)) for entering as an applicant for admission who is not in possession of valid unexpired immigrant visa, reentry permit, border crossing card or other valid entry document.[1] (Dkt. No. 1 at 8.) Ms. Aperyan was released

[1] Petitioner also claims the Department charged her as "an alien present in the United States without having been admitted or paroled" pursuant to INA §212(a)(6)(A)(i). However, the Petition and subsequent NTA evidence submitted by the Respondents do not include that charge. Thus, the Court will proceed considering only the INA §212(a)(7)(A)(i) charge.

from custody subject to supervision under Immigration and Customs Enforcement's ("ICE's") Non-Detained/Alternatives to Detention Unit ("ND/ATD"), which included regular reporting to ICE. (Dkt. No 15, at 8.) Ms. Aperyan was ordered to appear at a future hearing before an Immigration Judge ("IJ") scheduled for May 6, 2026, at 1:00 PM. *Id*. at 14.

From her time of entry in September 2024 until January this year, Petitioner claims she has remained in compliance with her supervision conditions. (Dkt. No. 1.) On January 9, 2026, pursuant to the conditions of her release, Petitioner appeared as instructed for a routine check-in with the ICE Alternatives to Detention Unit in Los Angeles, California. (Dkt. No. 1 at 2; Dkt. No 15, at 8.) At the check-in, she was issued a Form I-213[2] (Record of Deportable/Inadmissible Alien) on January 9, 2026, alleging "numerous violations" of her release. (Dkt. No. 15, Ex. B.) Petitioner was arrested by ICE Enforcement and Removal Operations officers. *Id*. Petitioner was not given any specifics or notice of what the violations were before the time of detention. (Dkt. No. 1.) She was then transferred to the Adelanto Detention Facility. *Id*. at 2. Until her re-detention, Petitioner had been out of custody for a year and a half. *Id*. At the time of her arrest and re-detention, she was the primary caretaker of a then fifteen-month-old disabled infant child. *Id*. at 9.

The Government submitted supplemental evidence at the request of the Court. (Dkt. No. 15.) It submitted Form I-831 (Record of

---

[2] Form I-213, Record of Deportable/Inadmissible Alien, provides the basis to support DHS's position that a person should be removed from the United States. It captures a range of information regarding a noncitizen apprehended by DHS to support the factual allegations and charge(s) of removability contained in the NTA. This includes biographic information, possible criminal records, any history of apprehension and detention by immigration authorities, and other relevant information. U.S. DEP'T OF JUST., *Descriptions of Forms and Supporting Documents*, https://www.justice.gov/d9/2024-09/02._sept_24_descriptions_of_forms_and_supporting_documents.pdf.

Deportable/Inadmissible Alien) dated January 9, 2026, which states that Petitioner had a negative result for National Crime Information Center ("NCIC") check and was thus not compliant with her ATD release conditions because of "numerous violations while under the ISAP program." *Id*. at 8. This finding was dated the same day of Petitioner's re-detention. *Id*.

Petitioner disputes that she has "numerous violations under the ISAP program." In her Petition, Ms. Aperyan argues that she has "complied with immigration reporting requirements prior to detention." (Dkt. No. 1 at 12, 32 ¶52.) In her Reply to the Supplemental Evidence, Petitioner argues that the government has not identified the dates of the alleged missed appointments, how many appointments were missed, what notice was sent and whether appoints were later rescheduled or excused. (Dkt. No. 18 at 7.) Petitioner further argues that she was never given a reason for her detention, or an opportunity to respond to the reasons for her detention. *Id*. Further, Petitioner argues that a missed appointment would not support the government's decision to re-detain her as it does not establish she is a flight risk. *Id*.

Petitioner filed the instant habeas petition on February 13, 2026. (Dkt. No. 1.) Respondents filed their Answer on March 3, 2026. (Dkt. No. 9.) Petitioner filed a Reply on March 11, 2026. (Dkt. No. 12.) The parties appeared for a hearing on March 20, 2026. (Dkt. No. 14.) Parties submitted supplemental briefing. (Dkt. Nos. 15, 18.) Both parties have consented to proceed before the Magistrate Judge. (Dkt. Nos. 16, 17.)

## III. DISCUSSION

Petitioner argues that her ongoing confinement violates the INA, the APA and the Fifth Amendment due process. The Respondents argue the Court lacks Jurisdiction under 8 U.S.C. § 1252 and Petitioner is not entitled to a bond hearing under 8 U.S.C. § 1226(a).

**A. The Court Does Not Lack Subject Matter Jurisdiction.**

The Court begins by addressing Respondents' argument that the federal courts lack subject matter jurisdiction over Petitioner's habeas claims.

Petitioner seeks habeas relief pursuant to 28 U.S.C. § 2241. Section 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing *INS v. St. Cyr*, 533 U.S. 289, 301–03 (2001)). Petitioner here advances a classic habeas claim—that her confinement by federal immigration authorities violates the Due Process Clause and the APA.

Respondents nonetheless argue that Congress stripped the federal courts' habeas jurisdiction over claims like Petitioner's through two provisions of the immigration laws, 8 U.S.C. §§ 1252(g) and 1252(b)(9). (Dkt. No. 9 at 5–9.) However, as courts in this district have found, Respondents' arguments cannot be reconciled with Supreme Court and Ninth Circuit authority. *See, e.g.*, *Hernandez Cruz v. Noem*, No. 8:25-cv-02566-SB-MAA, 2025 WL 3482630, at *1–2 (C.D. Cal. Dec. 2, 2025); *Altamirano Ramos v. Lyons*, 809 F. Supp. 3d 1015, 1019 (C.D. Cal. 2025).

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . " 8 U.S.C. § 1252(g). "The Supreme Court has instructed that we should read § 1252(g) narrowly." *Ibarra-Perez v. United States*, 154 F.4th 989, 991 (9th Cir. 2025) (citing *Dep't of Homeland Sec. v. Regents of the Univ. of*

*California*, 591 U.S. 1, 19 (2020)). Section 1252(g) thus applies only to "those three specific actions themselves." *Id.* at 996.

Respondents argue that Petitioner's claims fall within one of the three listed actions because his "detention arises from the decision to *commence* such proceedings against him." (Dkt. No. 9 at 5–6.) (emphasis added). But the Supreme Court has refused to "interpret [Section 1252(g)'s] language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality) (citing *Reno v. American-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482–83 (1999)). Rather, it has construed Section 1252(g) to apply to the "particular evil" it was directed against: "attempts to impose judicial constraints upon prosecutorial discretion." *AADC*, 525 U.S. at 485 n.9. Petitioner's claims challenge his detention, not the Government's "prosecutorial discretion" to "commence" removal proceedings. As such, Section 1252(g) does not apply.

Nor does Section 1252(b)(9) apply to Petitioner's habeas claims. Section 1252(b)(9) funnels "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken ... to remove an alien" into the procedures for review of final orders of removal—namely, petitions for review in the circuit courts. 8 U.S.C. § 1252(b)(9). Consistent with its construction of Section 1252(g), the Supreme Court has rejected an "expansive interpretation of" Section 1252(b)(9) that would apply to any claims that might conceivably "aris[e] from" immigration enforcement. *Jennings*, 583 U.S. at 293 (plurality). Among other problems, such an interpretation would render detention claims "effectively unreviewable" because, "[b]y the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place." *Id.* Accordingly, the Court has twice held that Section 1252(b)(9) does not apply to

noncitizens' claims challenging their detention without a bond hearing. *Id.*; *Nielsen v. Preap*, 586 U.S. 392, 402 (2019).

Petitioner's claims—like those at issue in *Jennings* and *Preap*—do not seek review of an order of removal or challenge "the decision to detain them in the first place or to seek removal [as opposed to the decision to deny them bond hearings]." *Preap*, 586 U.S. at 402. Accordingly, Section 1252(b)(9) does not preclude this Court from considering Petitioner's claims.

**B. Petitioner's Detention Violates Due Process.**

Petitioner argues that her ongoing confinement violates due process. As an initial matter, the Court observes that Respondents did not respond to Petitioner's due process claim in their Answer. (Dkt. No. 9.) Accordingly, the Court construes Respondents' failure to address Petitioner's due process claim as a concession. *See* e.g., *Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession). In the interest of being thorough, the Court will still analyze the merits of Petitioner's Due Process claim.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). The Fifth Amendment provides that "[n]o person shall…be deprived of…liberty…without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States,

"including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–1033(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d at 1032–1033 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that procedural due process principles prohibit the Government from re-detaining her without adequate pre-deprivation process or a material intervening change in circumstances.

In reaching this conclusion, the Court is guided by the analysis in a decision by District Judge Mark Scarsi in *Cruz v. Lyons*, No. 5:25-CV-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). There, ICE

detained the petitioner, who had been paroled into the United States a decade earlier, when she appeared as instructed for an appointment with United States Citizenship and Immigration Services. As here, ICE did not provide the petitioner notice or a hearing before detaining her. And as here, the petitioner had complied with her release conditions throughout her time on parole. Judge Scarsi found that the petitioner's detention violated her due process rights and issued a temporary restraining order requiring the petitioner's release and preventing her re-detention without a pre-deprivation hearing. *Id.* at *3; *see Cruz v. Lyons*, No. 25-CV-02879, 2025 WL 3443146 (C.D. Cal. Dec. 1, 2025) (granting preliminary injunction a month later). *See also Meneses v. Santacruz*, No. 2:25-cv-11206-MCS-PVC, 2025 WL 3481771, at *4 (C.D. Cal. Dec. 2, 2025) (granting preliminary injunction requiring release of noncitizen based on substantially similar analysis).

As in *Cruz*, the Court considers Petitioner's procedural due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976). *Mathews* is not a bright-line-test but rather a flexible test depending on the different circumstances. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Foss v. Nat'l Marine Fisheries Serv.*, 161 F.3d 584, 589 (9th Cir. 1998). Here, the *Mathews* factors tip in favor of Petitioner.

**1. Private Interest**

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining her settled life out of custody. Petitioner has lived in the United States for approximately one and a half years, during which time she has served as the primary caregiver to her disabled infant child and developed ties with her family and community. (Dkt. No. 1 at 31.) While Petitioner remained subject to supervision during this time, "a person who is in

fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles h[er] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

The Petitioner resided in the United States for approximately a year and half before her recent re-detention. (Dkt. No. 1 at 2.) As her circumstances illustrate, a person can develop meaningful ties in such a relatively short period of time. Following her release from immigration custody, Petitioner has been the primary caretaker of a disabled fifteen-month-old infant child, has a stable residence with family support, and deepened her connections with her family and communities in the United States. (*See* Dkt. No. 1 at 31, Exhs. C, E.) (describing Petitioner's son's disabilities and how she is the primary caregiver, as well as connections with her community and church in the United States while released on supervision). While individuals apprehended shortly after entry in the United States may have "a lesser liberty interest" "at the margin" than other noncitizens who have resided in the United States for decades, "the same important interest is at stake—freedom from prolonged detention." *Diouf*

*v. Napolitano*, 634 F.3d 1081, 1086-87 (9th Cir. 2011), *overruled on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022).

Consistent with this conclusion, multiple courts have found that noncitizens developed protectable liberty interests in their release from immigration custody for periods comparable to those at issue here. *See, e.g., Clene C. D. v. Robbins*, No. 1:25-CV-01463-KES-SKO, 2025 WL 3492118, at *5 (E.D. Cal. Dec. 4, 2025) (finding a petitioner had a constitutionally protected liberty interest in "eleven months she spent at liberty" following release under Section 1226(a)); *Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to petitioner released for "over two years" under Section 1226(a)); *Pinchi*, 792 F. Supp. 3d at 1034 (same, for petitioner released "over two years" under Section 1226(a)); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321–22 (W.D. Wash. 2025) (same, petitioner released for approximately 21 months under Section 1226(a)).

The Court therefore concludes that the Due Process Clause protects the Petitioner's substantial liberty interest in maintaining her freedom from confinement.

**2. Risk of Erroneous Deprivation**

With respect to the second *Mathews* factor, the Court finds that "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing." *Cruz v. Lyons,* No. 25-CV-02879, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S.

at 699. But Petitioner has not been afforded any process to determine whether her detention in fact advances either purpose.

Petitioner is not a flight risk or danger. Petitioner's initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 25-CV-02198, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Petitioner was released under ATD. (Dkt. No. 15 at 8.) "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk. Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

The risk of a wrongful deprivation is especially high here given evidence that Petitioner has no criminal record, has argued her compliance with the terms of her parole, and has maintained required contacts with the federal government, including the one that precipitated her detention. (Dkt. No.1; Dkt. No. 15 at 7–9.) Since her release, Petitioner has not given any reason to think that the Government's determination was in error. Though the government alleges a vague statement that she has "numerous violations while under the ISAP program," it provides no documentation as to what those alleged violations were, when they occurred and what notice was given to Petitioner. An ISAP violation can be as miniscule as a missed app prompt or as substantial as a new criminal arrest. Given that Petitioner was picked up at a routine ICE check-in, the record is insufficient to show she was not compliant with her ATD release

conditions. (Dkt. No. 15 at 8.) Petitioner argues she has complied with her conditions of supervision, including by reporting for regular check-ins with ICE, and maintaining a stable life with her family, including caring for a disabled child. (Dkt. No. 1.)

The Court concludes that there is a high risk that the lack of pre-deprivation process—that is, notice of any alleged release violations and a hearing to determine whether Petitioner in fact presents a danger or flight risk—has resulted in Petitioner's unnecessary detention.

**3. Government Interest**

As to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Cruz v. Lyons*, 25-cv-02879, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025) (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine…" *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025).

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Government's lack of constitutionally-adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is

minimal. The Court therefore concludes that the Government's re-detention of Petitioner without adequate pre-deprivation process violated due process and that she should be released forthwith.

Finally, the Court turns to the question of exactly what process is due before the Government may re-detain Petitioner. It is well-established that the Due Process Clause usually "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). Petitioner specifies the "kind of" hearing she believes is warranted before she may be re-detained: "a meaningful, individualized custody determination before a neutral decisionmaker where liberty interests are at stake. Such a determination must assess whether continued detention is actually necessary to mitigate flight risk or danger to the community." (Dkt. No. 1 at 32 ¶53.) *See Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) (holding that due process requires the government to justify prolonged immigration detention of certain noncitizens by "clear and convincing evidence" that an alien is a flight risk or a danger to the community). Here, the Petitioner was re-detained on January 9, 2026, when she reported as instructed for a supervision check-in as per her reporting requirements—the same day the government provided Form I-213 indicating there were "numerous violations" of her release conditions. (Dkt. No. 1 at 2; Dkt. No. 15 at 8.) Providing a document on the same day of detention is insufficient pre-deprivation notice to provide a meaningful opportunity to respond. Ms. Aperyan did not receive adequate notice of this finding and had no opportunity to meaningfully respond prior to her detention. Moreover, Respondents did not address the appropriate procedures for a re-detention. Because Respondents do not provide any reason to reject Petitioner's position, and it is consistent with *Singh*, Petitioner's requested relief is appropriate.

Accordingly, the Court hereby orders Petitioner released from detention forthwith and the Respondents are hereby prevented from re-detaining the Petitioner. If the Respondents are to re-detain her, Petitioner must be provided adequate pre-deprivation notice and a hearing at which the Government must justify the need to confine her.

**C. Petitioner's Remaining Claims**

Because the Court concludes that Petitioner is entitled to release on due process grounds, it declines to address her alternative arguments including whether her detention violates § 1126 and *Bautista*, and the APA. The Court does conclude—as it is undisputed that Petitioner applied for admission through the border with Mexico as an asylum-seeking noncitizen who was not in possession of a valid entry document and is charged with INA §212(a)(7)(A)(i) (codified as 8 U.S.C. § 1182(a)(7)(A)(i)), and detained under 8 U.S.C. section 1225(b)—she is not entitled to a bond hearing under § 1225(b).

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release along with her personal belongings, subject to appropriate conditions of supervision, and preventing her re-detention absent pre-deprivation notice and a hearing at which the Government must justify the need to confine her; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody. Additionally, the Petitioner and the Court shall be provided with at least 20 days of notice prior to Petitioner being

removed from this jurisdiction.

IT IS SO ORDERED.

DATED: March 27, 2026

*/s/ Anna Y. Park*

ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

# Exhibit K

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BORIS ASATRYAN,<br>Petitioner,<br>v.<br>TODD LYONS, et al.,<br>Respondents. | Case No. 5:26-cv-01895-MBK<br><br>ORDER GRANTING PETITION FOR HABEAS CORPUS |

Petitioner Boris Asatryan is an immigration detainee in custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Mr. Asatryan is a native of Armenia who was paroled into the United States approximately three years ago and has remained in compliance with his supervision conditions since that time. Mr. Asatryan was recently re-detained by Immigration and Customs Enforcement ("ICE"). In this habeas action, Mr. Asatryan challenges his re-detention under the Due Process Clause, the Immigration and Nationality Act, and the Administrative Procedures Act.

Following several recent decisions in this District, the Court finds that Petitioner's sudden re-detention—without any meaningful pre-deprivation

notice or an opportunity to be heard—violates due process. Accordingly, the Court grants the Petition and issues a writ of habeas corpus requiring Mr. Asatryan's release and preventing his re-detention absent pre-deprivation notice and a hearing.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner Asatryan is a native and citizen of Armenia. Dkt. 1 at 2. He entered the United States at the San Ysidro Port of Entry on February 25, 2023, and was subsequently released into the United States shortly thereafter. *Id.* at 6, 19-22. Since that time, Petitioner has resided in the United States continuously and complied with all the conditions of his release. *Id.* at 6. Mr. Asatryan lives with his wife and two children, and has established strong family and community ties. *Id*. Petitioner suffers from serious medical conditions, including a prior heart attack requiring two stents and ongoing medication, and limited mobility due to a shortened Achilles tendon. *Id.* at 7. Petitioner's wife serves as his primary caregiver and assists with his daily medical and physical needs. *Id.*

On April 8, 2026, Mr. Asatryan was taken into custody by ICE without prior notice or any meaningful individualized custody determination. *Id.* He has not received a bond hearing or any other opportunity to challenge his detention before a neutral decisionmaker. *Id.* While in ICE custody, Petitioner experienced a medical emergency during which he fainted and became

unresponsive, requiring hospitalization for two days prior to his transfer to the Adelanto Detention Facility. *Id.* at 3.

Petitioner's removal proceedings are ongoing. *Id.* at 4. He is not subject to a final order of removal. *Id.*

On April 16, 2026, Petitioner Asatryan filed the instant habeas Petition. Dkt. 1. Petitioner advances six claims: (1) Petitioner's re-detention violates procedural due process under the Fifth Amendment because he has been re-detained "without a prompt and meaningful custody hearing before a neutral decisionmaker" ( *Id.* at 8); (2) Petitioner's continued detention violates substantive due process because it is "excessive and not reasonably related to any legitimate government purpose" (*Id.* at 9); (3) Petitioner's re-detention without process is "an arbitrary and unconstitutional deprivation of liberty" (*Id.*); (4) Petitioner's re-detention violates the Immigration and Nationality Act (*Id.*); (5) Petitioner's re-detention violates the Administrative Procedure Act (*Id.* at 9-10); and (6) the Court may issue the writ pursuant to the All Writs Act (*Id.* at 10).

On April 16, 2026, the Court issued Notice of General Order 26-05 and a Briefing Schedule. Dkt. 5. On April 23, 2026, Respondents filed a response to the Petition stating that "Petitioner is an arriving alien subject to mandatory detention under 8 U.S.C. §1225(b)(1)," but otherwise not challenging the Petition. Dkt. 7. Mr. Asatryan filed a reply on April 24, 2026. Dkt. 8.

## II. DISCUSSION

Petitioner argues that his ongoing confinement violates substantive due process, procedural due process, the INA, and the APA. Consistent with recent decisions by this district and others, the Court finds that Petitioner's re-detention—without notice or a meaningful opportunity to be heard—violates

due process. In light of that finding and Respondent's lack of any meaningful opposition to the Petition, the Court will grant the Petition, order Petitioner's release, and prevent his re-detention absent pre-deprivation notice and a hearing.

This Court has previously concluded that the Government violates procedural due process by re-detaining a noncitizen released on parole without pre-deprivation notice or a hearing. *See Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03229-JAK-MBK, 2025 WL 4065463, at *1 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026). Because Respondents do not contest the merits of Petitioner's claims, and the Court has already addressed them in *Yataco*, the Court will only briefly address why due process principles support granting the Petition

The Court considers Petitioner's procedural due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining his life out of custody. While DHS had released Mr. Asatryan on parole and subject to conditions, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable— has a liberty interest that entitles him to constitutional due process before he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal.

Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482).

With respect to the second *Mathews* factor, "[t]here is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of his liberty interest absent a pre-detention hearing." *Cruz v. Lyons*, No. 5:25-CV-02879-MCS-MBK, Dkt. 12 at 7 (C.D. Cal. Nov. 6, 2025). The "primary" purpose of immigration detention is to ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001). Nothing in the record suggests that Petitioner is a flight risk or danger. His initial release from custody, "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 5:25-cv-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). Since that time, Mr. Asatryan has complied with the conditions of his release and appeared for ICE check-ins. Based on the record, the Court concludes that there is a high risk that a lack of pre-deprivation process—that is, notice and a hearing to determine whether Petitioner in fact presents a danger or flight risk—has likely already resulted in Petitioner's unnecessary detention.

With respect to the third *Mathews* factor, "as many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Cruz*, No. 5:25-cv-02879, Dkt. 12 at 7 (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez v. Sessions*, 872 F.3d 976,

994 (9th Cir. 2017). Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025)). "In immigration court, custody hearings are routine ...." *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO, 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025).

In sum, the Court finds that all three *Mathews* factors favor Petitioner. Accordingly, the Court finds that Petitioner's detention without pre-deprivation notice or a hearing violates due process.

## III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release, subject to the conditions of his prior release on parole, and preventing his re-detention absent notice and a pre-deprivation hearing at which the Government must justify his detention by clear and convincing evidence; (3) Respondents shall file a status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from custody.

Dated: April 24, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

# Exhibit L

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LONG THANH LY,<br>Petitioner,<br>v.<br>D. MARIN, ETC., ET AL.,<br>Respondents. | No. ED CV 26-2485-SSS(E)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Sunshine Suzanne Sykes, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

On May 7, 2026, Petitioner, a detainee of Immigration and Customs Enforcement ("ICE") filed a "Petition for Writ of Habeas Corpus, etc." ("the Petition"). According to the Petition, Petitioner is a native and citizen of Vietnam who was released from immigration detention on supervision in 1998, but re-detained in violation of Petitioner's federal rights on April 21, 2026. The Petition seeks, inter alia, immediate release.

///

///

On May 20, 2026, Respondents filed "Respondents' Response to Petition for Writ of Habeas Corpus" ("the Response"). The Response states: "Respondents are not presenting an opposition argument at this time." Petitioner did not file a Reply within the allotted time.[1]

Based on the facts alleged in the Petition, and in view of Respondents' failure to oppose the Petition, the Magistrate Judge recommends that Judgment be entered ordering Respondents to release Petitioner (A 43066811) from detention immediately, subject to the previous conditions of supervision.[2]

DATED: June 3, 2026.

CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

---

[1] Petitioner's newly retained counsel did file a copy of a document filed in action No. 26-2560-AS, which does not affect the disposition recommended herein.

[2] Petitioner has not justified any additional or different form of habeas relief.

Case 5:26-cv-02534-JDE Document 11 Filed 09/14/26 Page 3 of 3 Page ID #:72

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LONG THANH LY,

Petitioner,

v.

D. MARIN, ETC., ET AL.,

Respondents.

No. ED CV 26-2485-SSS(E)

ORDER ACCEPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. section 636, the Court has reviewed the Petition, all of the records herein and the Report and Recommendation of United States Magistrate Judge. Further, the Court has engaged in a de novo review of those portions of the Report and Recommendation to which any objections have been made. The Court accepts and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that: (1) the Report and Recommendation is accepted and adopted; and (2) Judgment shall be entered ordering Respondents to release Petitioner (A 43066811) from detention immediately, subject to the previous conditions of supervision.

///

///

///

IT IS FURTHER ORDERED that the Clerk serve forthwith a copy of this Order, the Magistrate Judge's Report and Recommendation and the Judgment herein on Petitioner, counsel for Petitioner and counsel for Respondents.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: ________________________, 2026.

______________________________________
SUNSHINE SUZANNE SYKES
UNITED STATES DISTRICT JUDGE

Case 5:26-cv-02534-SDE Document 11 Filed 09/14/26 Page 120 of 129 Page ID #:75

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LONG THANH LY,

Petitioner,

v.

D. MARIN, ETC., ET AL.,

Respondents.

No. ED CV 26-2485-SSS(E)

JUDGMENT

IT IS ADJUDGED that Respondents are ordered to release Petitioner (A 43066811) from detention immediately, subject to the previous conditions of supervision.

DATED: ______________________, 2026

______________________________
SUNSHINE SUZANNE SYKES
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LONG THANH LY,<br>Petitioner,<br>v.<br>D. MARIN, ETC., ET AL.,<br>Respondents. | No. ED CV 26-2485-SSS(E)<br><br>ORDER ACCEPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. section 636, the Court has reviewed the Petition, all of the records herein and the Report and Recommendation of United States Magistrate Judge. Further, the Court has engaged in a de novo review of those portions of the Report and Recommendation to which any objections have been made. The Court accepts and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that: (1) the Report and Recommendation is accepted and adopted; and (2) Judgment shall be entered ordering Respondents to release Petitioner (A 43066811) from detention immediately, subject to the previous conditions of supervision.

///

///

///

IT IS FURTHER ORDERED that the Clerk serve forthwith a copy of this Order, the Magistrate Judge's Report and Recommendation and the Judgment herein on Petitioner, counsel for Petitioner and counsel for Respondents.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 14, 2026.

SUNSHINE SUZANNE SYKES
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LONG THANH LY,<br>Petitioner,<br>v.<br>D. MARIN, ETC., ET AL.,<br>Respondents. | No. ED CV 26-2485-SSS(E)<br><br>REPORT AND RECOMMENDATION<br>OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Sunshine Suzanne Sykes, United States District Judge, pursuant to 28 U.S.C. section 636 and General Order 05-07 of the United States District Court for the Central District of California.

On May 7, 2026, Petitioner, a detainee of Immigration and Customs Enforcement ("ICE") filed a "Petition for Writ of Habeas Corpus, etc." ("the Petition"). According to the Petition, Petitioner is a native and citizen of Vietnam who was released from immigration detention on supervision in 1998, but re-detained in violation of Petitioner's federal rights on April 21, 2026. The Petition seeks, inter alia, immediate release.

///

///

On May 20, 2026, Respondents filed "Respondents' Response to Petition for Writ of Habeas Corpus" ("the Response"). The Response states: "Respondents are not presenting an opposition argument at this time." Petitioner did not file a Reply within the allotted time.[1]

Based on the facts alleged in the Petition, and in view of Respondents' failure to oppose the Petition, the Magistrate Judge recommends that Judgment be entered ordering Respondents to release Petitioner (A 43066811) from detention immediately, subject to the previous conditions of supervision.[2]

DATED: June 3, 2026.

CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

[1] Petitioner's newly retained counsel did file a copy of a document filed in action No. 26-2560-AS, which does not affect the disposition recommended herein.

[2] Petitioner has not justified any additional or different form of habeas relief.

**NOTICE**

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file objections as provided in the Local Rules Governing the Duties of Magistrate Judges and review by the District Judge whose initials appear in the docket number. No notice of appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the judgment of the District Court.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LONG THANH LY,<br>Petitioner,<br>v.<br>D. MARIN, ETC., ET AL.,<br>Respondents. | No. ED CV 26-2485-SSS(E)<br><br>ORDER ACCEPTING FINDINGS, CONCLUSIONS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. section 636, the Court has reviewed the Petition, all of the records herein and the Report and Recommendation of United States Magistrate Judge. Further, the Court has engaged in a de novo review of those portions of the Report and Recommendation to which any objections have been made. The Court accepts and adopts the Magistrate Judge's Report and Recommendation.

IT IS ORDERED that: (1) the Report and Recommendation is accepted and adopted; and (2) Judgment shall be entered ordering Respondents to release Petitioner (A 43066811) from detention immediately, subject to the previous conditions of supervision.

///

///

///

IT IS FURTHER ORDERED that the Clerk serve forthwith a copy of this Order, the Magistrate Judge's Report and Recommendation and the Judgment herein on Petitioner, counsel for Petitioner and counsel for Respondents.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: ________________________, 2026.

______________________________
SUNSHINE SUZANNE SYKES
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LONG THANH LY,<br>Petitioner,<br>v.<br>D. MARIN, ETC., ET AL.,<br>Respondents. | No. ED CV 26-2485-SSS(E)<br><br>JUDGMENT |

IT IS ADJUDGED that Respondents are ordered to release Petitioner (A 43066811) from detention immediately, subject to the previous conditions of supervision.

DATED: ______________________, 2026

______________________________
SUNSHINE SUZANNE SYKES
UNITED STATES DISTRICT JUDGE

**PROOF OF SERVICE**

I am over the age of eighteen and not a party to this action. My business address is 440 Western Ave. Suite 205 Glendale, CA 91201.

On September 14, 2026 I served the foregoing **PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2241), AND DECLARATORY AND INJUNCTIVE RELIEF** on the following by [CM/ECF electronic filing and/or U.S. Mail / Certified Mail / email]:

U.S. Attorney's Office Central
District of California
312 N. Spring Street
Los Angeles, CA 90012

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530-0001

Facility Director Adelanto East ICE
Processing Center
10400 Rancho Road
Adelanto, CA 92301

Secretary, U.S. Department of
Homeland Security
2707 Martin Luther King Jr. Ave SE
Washington, DC 20528

Acting Director, U.S. Immigration
and Customs Enforcement
500 12th Street SW
Washington, DC 20536

Field Office Director
ICE Enforcement and Removal
Operations – Los Angeles
300 N. Los Angeles Street
Los Angeles, CA 90012

Warden, Adelanto East ICE
Processing Center
10400 Rancho Road
Adelanto, CA 92301

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 14, 2026 at Glendale, CA.
/s/ *Sarah Hacobian*
Sarah Hacobian