UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| ADIS POGOSYAN,<br>Petitioner,<br>v.<br>TODD LYONS, et al.,<br>Respondents. | No. 5:26-cv-05334-JDE<br><br>ORDER REGARDING PETITION |

**I.**

**PROCEEDINGS**

On September 14, 2026, Adis Pogosyan ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his arrest and detention by immigration authorities under the Due Process Clause of the Fifth Amendment, seeking immediate release. Dkt. 1 ("Petition" or "Pet."). The Petition is electronically signed by Petitioner's counsel. Id. at 20. On September 22, 2026, Respondents filed an Answer to the Petition. Dkt. 7 ("Ans."). On September 24, 2026, Petitioner filed a Reply. Dkt. 8 ("Reply").

For the reasons discussed below, the Petition is denied.

## II.

## RELEVANT BACKGROUND

Petitioner is a native and citizen of Armenia. Pet., Exh. B; Ans. Exh. 1 ("Form I-213") at 2. Petitioner was admitted into the United States on a B-2 temporary visa at John F. Kennedy Airport in New York, New York, on December 26, 1998, and was granted derivative asylee status on February 17, 1999, with a retroactive date of June 15, 1998. Id. at 2-3.

On November 30, 2010, Petitioner was convicted of a federal felony charge of Possession of 15 or More Counterfeit Access Devices, in violation of 18 U.S.C. § 1029(a)(3), in the United States District Court for the District of Kansas and sentenced to a term of 18 months imprisonment. Form I-213 at 3.

On July 3, 2023, at the San Ysidro Port of Entry in San Diego, California, Petitioner was paroled into the United States "for criminal prosecution" to face pending criminal charges. Form I-213 at 3.

On October 7, 2024, Petitioner was convicted of a federal felony charge of Prohibited Person in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1), (8), (9), and sentenced to a term of 27 months imprisonment (the "Firearm Case"). Form I-213 at 3. Petitioner concedes this prior conviction and 27-month sentence. Pet. ¶¶ 66, 67.[1]

The filings in the Firearm Case provide more details about Petitioner's parole into the United States at the San Ysidro Border Entry on July 3, 2023,

[1] The docket in the Firearm Case is located at United States v. Adis Poghosyan (C.D. Cal.) Case No. 2:23-cr-00443-RGK. Although Petitioner's last name is spelled with an additional letter "h" in the Firearm Case, the names are otherwise identical, the charge is the same, the sentence is the same, and the counsel is the same as described in the Petition and in the Form I-213. The undersigned takes judicial notice of the Firearm Case and information obtained from the docket and the specific documents filed in the case, referenced below. See United States v. Raygoza-Garcia, 902 F.3d 994, 1001 (9th Cir. 2018).

and other matters material to this action. The Complaint in the Firearm Case reflects that on June 23, 2023, during a fight in front of a restaurant located in Glendale, California, Petitioner shot a man in the chest and then fled; the man died from the gunshot wound. Firearm Case, Dkt. 1 ¶¶ 4-18. After law enforcement interviewed one of the persons present at the scene of the shooting in the presence of that person's attorney, searched a vehicle left behind near the scene of the shooting and found correspondence in Petitioner's name inside, conducted a DNA test of a cigarette butt from the scene that matched with a known alias of Petitioner, and served several warrants in attempts to locate Petitioner, Petitioner, through his attorney, surrendered "to law enforcement at the Mexico/U.S. border" and, after being processed by United States Customs and Border Protection, was turned over to Glendale Police Department detectives who took Petitioner into custody and transported him to the Glendale Police Department. Id. ¶ 5, 20-24. A federal felony complaint charging a violation of 18 U.S.C. § 922(g)(1) was filed on August 8, 2023 (id.); Petitioner made his initial appearance in federal court on August 11, 2023, and was released on a $320,000 Appearance Bond, with conditions (Firearm Case, Dkt. 8). An Indictment charging Petitioner, aka "Jilbert Mnatsakanyan," with violating 18 U.S.C. §§ 922(g)(1), (8), (9) and 924(d)(1), was returned and filed on September 6, 2023. Firearm Case, Dkt. 27.

On June 10, 2024, the government filed a Plea Agreement, signed by Petitioner, by which he agreed to plead guilty to violating 18 U.S.C. § 922(g)(1), (8), (9), agreed that he is, in fact, guilty of the charge, and agreed that the following was true:

> On or about June 23, 2023, in Los Angeles County, which is within the Central District of California, defendant knowingly and unlawfully possessed a firearm and ammunition, namely a Ruger, LCP, .380 caliber pistol, bearing serial number 372415462 and five

rounds of Arms Corporation of the Philippines .380 caliber ammunition.

The Ruger, LCP, .380 caliber pistol, bearing serial number 372415462, was manufactured in either Arizona or North Carolina. The five rounds of Arms Corporation of the Philippines .380 caliber ammunition were manufactured in the Philippines. In order for the firearm and ammunition to have been located in California on June 23, 2023, the firearm and each round of ammunition would have had to have been shipped or transported from one state to another state or between a foreign nation and the United States.

Before defendant's knowing and unlawful possession of the firearm and ammunition on or about June 23, 2023, defendant knew he had been convicted of the following felony crimes, punishable by a term of imprisonment exceeding one year:

- Possession of Fifteen or More Counterfeit Access Devices, in violation of Title 18, United States Code, Section 1029(a) (3), in the United States District Court for the District of Kansas, case number 6:10-cr-10060-01, on or about February 15, 2011;
- Burglary, in violation of Nevada Revised Statutes Section 205.060, in the Eighth Judicial District Court, Clark County, State of Nevada, case number C-14-303320-2, on or about May 29, 2015; and
- Identity Theft, in violation of California Penal Code Section 530.5(a), in the Superior Court of California, County of Los Angeles, case number GA099492, on or about May 25, 2017.

Further, at the time defendant knowingly possessed the firearm and ammunition, he was and knew that he was subject to a court order, issued on or about August 19, 2022, in the Superior Court of California, County of Los Angeles, case number 2GD00785, restraining him from harassing, stalking, and threatening intimate partner victim A.A., with whom the defendant shares children, and victims Em.P. and El.P., with whom defendant had resided as victims Em.P.'s and El.P.'s parent or guardian and who were approximately eight and five years old at the time the court order was issued (collectively, the "intimate partners"). The order restrained defendant from engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner, and by its terms explicitly prohibited the use, attempted use, or threatened use of physical force against such intimate partner that would reasonably be expected to cause bodily injury. The order was issued after a hearing of which defendant received actual notice and at which he had an opportunity to participate.

Finally, prior to defendant's possession of the firearm and ammunition, defendant knew he had been convicted on or about August 19, 2022 of a misdemeanor crime of domestic violence, namely, Domestic Battery, in violation of California Penal Code Section 243(e)(1), in the Superior Court of California, County of Los Angeles, case number 2GD00785.

When defendant knowingly and unlawfully possessed the firearm and ammunition on June 23, 2023, defendant knew he had previously been convicted of the above felony offenses and misdemeanor crime of domestic violence and that he was subject to a domestic violence protective order.

Firearm Case, Dkt. 65 ("Plea Agreement") at 1-2, 7-10, 17-18. Petitioner pled guilty to the foregoing charge on June 17, 2024. Firearm Case, Dkt. 67.

On September 24, 2024, Petitioner filed a Sentencing Memorandum in the Firearm Case, recounting, "he stands convicted of an aggravated felony, which requires automatic removal," reiterating, "this conviction for an aggravated felony means 'virtually automatic, unavoidable deportation.'" Firearm Case, Dkt. 69 at 17 (citations omitted). Petitioner further argued, in seeking a reduced sentence, that he "will be taken into ICE custody at the conclusion of this matter and held during deportation proceedings." Id.

On October 7, 2024, the Honorable R. Gary Klausner, United States District Judge, sentenced Petitioner to a term of 27 months imprisonment and remanded him forthwith into custody. Firearm Case, Dkt. 74, 75.

On August 26, 2026, the Department of Homeland Security ("DHS") issued a Notice of Intent to Terminate Asylum Status as to Petitioner and, on or before August 29, 2026, issued a Notice to Appear directed to Petitioner, placing him in "immigration proceedings pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration & Nationality Act, as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card or other valid document." I-213 at 3. He was taken into DHS custody on September 1, 2026 (id.), apparently transferred directly from Federal Bureau of Prisons ("BOP") custody following the completion of his sentence in the Firearm Case, as the BOP online inmate locator, of which the Court takes judicial notice,[2] reflects Petitioner was released from BOP custody on September 1, 2026. Petitioner's removal proceedings are pending and he remains in ICE custody. Pet. ¶ 13.

---

[2] Fed. R. Evid. 201(b); United States v. Basher, 629 F.3d 1161, 1165 n.2 (9th Cir. 2011) (taking judicial notice of BOP's online Inmate Locator to determine date defendant was released from custody).

Respondents take the position that Petitioner at most "appears to be entitled to request and receive an initial bond hearing pursuant to Rodriguez Vazquez v. Bostock, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026)," but argue that he is "properly detained pending such potential bond proceedings because [he] was re-detained due to a material change of circumstance, specifically the" conviction in the Firearm Case, and further argue that, as Petitioner has not yet requested such a bond hearing from the Immigration Court, he "has not yet properly exhausted his available administrative remedies, and his Petition is defective on that basis." Id. at 2-3. Respondents contend Petitioner is not, in any event, entitled to an order of release from this Court. Id. Respondents do not contend that Petitioner is subject to mandatory immigration detention.

In Reply, Petitioner argues that Respondents' Answer misses the point of the Petition, which challenges his September 1, 2026, detention upon the completion of his sentence in the Firearm Case "without constitutionally adequate pre-detention process," which, he argues, "extinguish[ed] [his] existing physical liberty . . . return[ing] him to civil confinement," in violation of his due process rights. Reply ¶ 12. As such, Petitioner contends that a post-detention bond hearing is insufficient and confirms that he does not seek a bond hearing, but rather seeks only an order "immediately releas[ing him] from immigration custody, restoring him to the conditions of liberty existing prior to his September 1, 2026 re-detention. Id. ¶ 88.

## III.

## DISCUSSION

A petitioner seeking habeas relief must demonstrate that he or she is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). The protections of habeas corpus extend to those in immigration detention. See Lopez-Marroquin v. Barr, 955 F.3d 759, 759 (9th Cir. 2020); Nadarajah v. Gonzales, 443 F.3d 1069, 1075-76 (9th Cir. 2006).

"[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order." Lopez-Marroquin, 955 F.3d at 759.

"It is the petitioner's burden to prove his custody is in violation of the Constitution, laws[,] or treaties of the United States." Snook v. Wood, 89 F.3d 605, 609 (9th Cir. 1996) (as amended). Petitioner contends that his September 1, 2026 transfer from BOP custody to ICE custody, without pre-detention process to contest that transfer of detention, violated his due process rights, requiring his immediate release. Petitioner has failed to carry his burden to prove that his current custody violates his federal rights such that he is entitled to immediate release.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those subject to final removal orders. Zadvydas v. Davis, 533 U.S. 678, 693-94 (2001). Due process generally requires that an individual be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner" before certain deprivations. See Mathews v. Eldridge, 424 U.S. 319, 333, 348 (1976) (citation omitted). The Court must consider: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335.

Here, Petitioner challenges his transfer from the custody of BOP following the completion of his sentence in the Firearm Case to ICE on September 1, 2026, after ICE issued a Notice of Intent to Terminate Asylum

Status and a Notice to Appear, which formally placed Petitioner in "immigration proceedings pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration [and] Nationality Act, as amended." Although Petitioner avers, vaguely, that he was "at physical liberty" at the time, the record appears to reflect that he was not released at the time, but rather was transferred from BOP custody to ICE custody. That transfer to ICE custody was expressly foreseen as a certainty by his counsel in the Firearm Case nearly two years earlier. It is not apparent on this record that Petitioner has met his burden to show that he had a protected liberty interest at the time of his transfer from BOP custody to ICE custody.

To the extent Petitioner argues that the "parole" granted in July 2023 at his entry at the San Ysidro Port of Entry created a liberty interest that remained in effect on September 1, 2026, that "parole" was for a specific reason: "for purposes of prosecution." It was given after Petitioner shot and killed a man in front of a restaurant in Glendale, California, after Petitioner fled the scene and fled to Mexico, after law enforcement executed several warrants in efforts to locate him, and after his lawyer arranged for his surrender and return, upon such parole, to be prosecuted. That prosecution having ended with the completion of his sentence in the Firearm Case on September 1, 2026, the parole "for purposes of prosecution" also terminated. See generally, 8 U.S.C. § 1182(d)(5)(A) (immigration officials may parole certain noncitizens into the United States "temporarily under such conditions [immigration officials] may prescribe"); 8 C.F.R. § 212.5(e)(1)(ii) (DHS's implementing regulations directing that parole is automatically terminated without written notice when the parole expires). As noted, Petitioner's counsel advised Judge Klausner in September 2024 that Petitioner "will be taken into ICE custody" after his sentence was completed and would be "held during deportation proceedings," with his removal being "virtually automatic,

unavoidable," so Petitioner clearly understood that his "parole" for purposes of prosecution would not result in his release upon completion of his sentence in the Firearm Case.

Regardless, even assuming some cognizable liberty interest existed at the time of Petitioner's transfer from BOP custody to ICE custody on September 1, 2026, the government has a "strong interest" in enforcing the immigration laws (Rodriguez Diaz v. Garland, 53 F.4th 1189, 1208 (9th Cir. 2022)). Here, the record reflects that in June 2023, Petitioner, a then three-time convicted felon who also had a domestic violence conviction and was subject to a court-issued restraining order limiting his contact with intimate partners, including two minor children, possessed and used a firearm, despite being precluded from lawfully possessing a firearm, shooting and killing a man, after which Petitioner fled to Mexico, after which he was paroled back into the United States "for purposes of prosecution" to face criminal charges stemming from his unlawful possession of a firearm and ammunition. After his conviction in the Firearm Case but before his release from BOP custody, DHS commenced immigration proceedings against Petitioner, who knew such proceedings, including his detention and likely removal, would follow the completion of his sentence as his attorney raised the issue to Judge Klausner. The government has a particularly strong interest in enforcing the immigration laws here.

In addition, the record shows that Petitioner has an ability to request a bond hearing before an immigration judge, at which he could be represented by counsel and would be afforded the opportunity to present evidence and argument to challenge his detention, with a subsequent opportunity to challenge an adverse bond decision by appeal to the Board of Immigration Appeals. Petitioner has apparently not requested such a bond hearing.

Petitioner has not shown that in the circumstances presented here, being offered a prompt post-detention bond hearing, after having been given prompt

notice of the basis for the immigration proceedings, was inadequate to safeguard any liberty interest he possessed and mitigate the risk of erroneous deprivation.

The Court finds that, to the extent Petitioner possessed a cognizable liberty interest as of September 1, 2026, the process Petitioner received post-deprivation was sufficient to protect his asserted liberty interest here. See Aguilar v. Semaia, 2026 WL 166906, at *4-5 (C.D. Cal. Jan. 16, 2026) (denying request for immediate release from immigration detention in light of post-detention process provided, including a bond hearing); F.R.V. v. Semaia, 2026 WL 852064, at *2-3 (C.D. Cal. Mar. 24, 2026) (finding petitioner failed to show a likelihood of success on her due process claim where she was provided a post-detention bond hearing); Singh v. Bowen, 2026 WL 485760, at *4-5 (C.D. Cal. Feb. 19, 2026) (same); see also Rodriguez Diaz, 53 F.4th at 1208 (explaining that courts must "consider the process [petitioner] received [while detained]" and "the further process that was available to him").

Accordingly, Petitioner has not shown that his September 1, 2026, transfer from BOP custody to ICE custody violated his due process rights such that release, the only remedy he seeks, is warranted.

**IV.**

**ORDER**

IT IS THEREFORE ORDERED that Judgment be entered denying the Petition with prejudice, though nothing herein precludes Petitioner from requesting a bond hearing before an immigration judge in his ongoing immigration proceedings.

Dated: September 25, 2026__

JOHN D. EARLY
United States Magistrate Judge